**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FTX TRADING LTD., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| ALAMEDA RESEARCH LLC, ALAMEDA RESEARCH LTD., FTX TRADING LTD., WEST REALM SHIRES, INC., and WEST REALM SHIRES SERVICES, INC.,<br><br>Plaintiffs,<br><br>-against-<br><br>FTX DIGITAL MARKETS LTD., BRIAN C. SIMMS, KEVIN G. CAMBRIDGE, and PETER GREAVES, and J. DOES 1–20<br><br>Defendants. | Adv. Pro. No. 23-50145 (JTD)<br><br><br>**Re: Adv. Docket Nos. 1, 3, 4 & 6** |

**MEMORANDUM IN SUPPORT OF MOTION OF FTX DIGITAL
MARKETS LTD. AND THE JOINT PROVISIONAL LIQUIDATORS
TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE,
<u>TO ABSTAIN FROM RULING ON COUNTS I-IV</u>**

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Chapter 11 Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 3

I.     FTX Trading .............................................................................................................. 3

II.    FTX Digital .............................................................................................................. 4

III.   Procedural History ................................................................................................... 6

ARGUMENT ......................................................................................................................... 8

I.     The Adversary Proceeding Is Void ......................................................................... 8

      **A.**   The Adversary Proceeding Violates FTX Digital's Chapter 15 Recognition Order ......................................................................................................... 8

      **B.**   The Claims Against The JPLs Are Improper ....................................................... 12

II.    The Contract Claims Should Be Dismissed Under Rule 12 ............................................ 13

      **A.**   Count III Fails to State a Claim for Relief ........................................................... 14

      **B.**   The Contract Claims Fail to Join All Necessary Parties ........................................ 15

III.   The Chapter 5 Claims Should Be Dismissed For Failure To State A Claim .................... 17

      **A.**   Counts V and VI Are Not Plausible ................................................................... 17

      **B.**   Only Actual Transfers Are Actionable Under Chapter 5 ....................................... 18

      **C.**   The Chapter 5 Claims Lack Adequate Specificity ................................................ 19

      **D.**   Allegations of Actual Fraudulent Intent Require Significantly More Than Provided by the Complaint .................................................................................. 22

      **E.**   The Complaint Lacks Other Critical Allegations Regarding the "Transfers" at Issue ................................................................................................................ 23

      **F.**   The Section 550 Claim Fails Along with the Other Chapter 5 Claims ................. 24

IV.   To The Extent The Contract Claims Are Or Will Be Properly Pleaded, This Court Should Abstain From Ruling On Them In Deference To The Bahamas Court ................ 24

CONCLUSION ..................................................................................................................... 30

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York,*

    762 F.2d 205 (2d Cir. 1985)........................................................26

*Ashcroft v. Iqbal,*

    556 U.S. 662 (2009)........................................................17, 18

*Barton v. Barbour,*

    104 U.S. 126 (1881)........................................................12, 13

*Bell Atl. Corp. v. Twombly,*

    550 U.S. 544 (2007)........................................................14, 18

*Brown v. Chesnut (In re Chesnut),*

    422 F.3d 298 (5th Cir. 2005) ........................................................10

*Charys Liquidating Tr. v. Growth Mgmt., LLC (In re Charys Holding Co.),*

    No. 08-10289, 2010 Bankr. LEXIS 2073 (Bankr. D. Del. July 14, 2010) ............................22

*Connelly v. Lane Constr. Corp.,*

    809 F.3d 780 (3d Cir. 2016)........................................................18

*Downs v. Andrews,*

    639 F. App'x 816 (3d Cir. 2016) ........................................................16

*Drauschak v. VMP Holdings Ass'n, L.P. (In re Drauschak),*

    481 B.R. 330 (Bankr. E.D. Pa. 2012) ........................................................30

*Erickson v. Pardus,*

    551 U.S. 89 (2007)........................................................14

*In re ABC Learning Centres Ltd.,*

    445 B.R. 318 (Bankr. D. Del. 2010) ........................................................11

AMERICAS 120697331

*In re Aphton Corp.*,

    423 B.R. 76 (Bankr. D. Del. 2010) ..................................................................21, 23

*In re CPW Acquisition Corp.*,

    No. 08-14623 AJG, 2011 WL 830556 (Bankr. S.D.N.Y. Mar. 3, 2011)...........................25, 27

*In re Cred Inc.*, No. 20-12836 (JTD),

    2023 WL 2940483 (Bankr. D. Del. Apr. 13, 2023)........................................................ passim

*In re Exide Techs., Inc.*,

    299 B.R. 732 (Bankr. D. Del. 2003) ......................................................................23

*In re FBI Wind Down, Inc.*,

    614 B.R. 460 (Bankr. D. Del. 2020) ......................................................................10

*In re Glob. Indus. Techs., Inc.*,

    303 B.R. 753 (Bankr. W.D. Pa. 2004), *vacated in part on other grounds*, 2004 WL 555418 (Bankr. W.D. Pa. Feb. 3, 2004) ......................................................................10

*In re Glob. Link Telecom Corp.*,

    327 B.R. 711 (Bankr. D. Del. 2005) .........................................................19, 21, 23

*In re Image Masters, Inc.*,

    421 B.R. 164 (Bankr. E.D. Pa. 2009), *aff'd on these grounds, vacated on other grounds sub nom. Image Masters, Inc. v. Chase Home Fin.*, 489 B.R. 375 (E.D. Pa. 2013) ......................16

*In re Int'l Tobacco Partners, Ltd.*,

    462 B.R. 378 (Bankr. E.D.N.Y. 2011)...........................................................25, 28

*In re Integrated Health Servs., Inc.*,

    291 B.R. 615 (Bankr. D. Del. 2003) ...........................................................25, 27, 28

*In re Irish Bank Resol. Corp. Ltd.*,

    No. BR 13-12159-CSS, 2019 WL 4740249 (D. Del. Sept. 27, 2019)....................................11

*In re Kessler*,

    430 B.R. 155 (Bankr. M.D. Pa. 2010) ......................................................................26

AMERICAS 120697331

*In re Levenstein*,

    371 B.R. 45 (Bankr. S.D.N.Y. 2007) ......................................................................10

*In re LSC Wind Down, LLC*,

    610 B.R. 779 (Bankr. D. Del. 2020) ................................................................23, 24

*In re Maxus Energy Corp.*,

    560 B.R. 111 (Bankr. D. Del. 2016) ...............................................................27, 28

*In re Old CarCo LLC*,

    435 B.R. 169 (Bankr. S.D.N.Y. 2010) ......................................................................21

*In re OMNA Med. Partners, Inc.*,

    No. 00-1493 (MFW), 2000 WL 33712302 (Bankr. D. Del. June 12, 2000) ...........................26

*In re Parker School Uniforms, LLC*,

    2021 WL 4553016 (Bankr. D. Del. Oct. 5, 2021) ...................................................................23

*In re Peregrine Sys., Inc.*,

    314 B.R. 31 (Bankr. D. Del. 2004), *rev'd on other grounds*, No. 02-12740, 2005 WL 2401955 (D. Del. Sept. 29, 2005) ............................................................................9

*In re Peregrine Sys., Inc.*,

    No. 02-12740, 2005 WL 2401955 (D. Del. Sept. 29, 2005)....................................................9

*In re Pillowtex Corp.*,

    427 B.R. 301 (Bankr. D. Del. 2010) ......................................................................19

*In re Plassein Int'l Corp.*,

    366 B.R. 318 (Bankr. D. Del. 2007), *aff'd*, 388 B.R. 46 (D. Del. 2008)................................18

*In re Regus Bus. Ctr. Corp.*,

    301 B.R. 122 (Bankr. S.D.N.Y. 2003)......................................................................29

*In re Rouge Indus., Inc.*,

    326 B.R. 55 (Bankr. D. Del. 2005) ......................................................................15

AMERICAS 120697331

*In re Sunset Aviation, Inc.*,

    468 B.R. 641 (Bankr. D. Del. 2011) ................................................................................19, 24

*In re Trans World Airlines, Inc.*,

    278 B.R. 42 (Bankr. D. Del. 2002) .................................................................................28

*In re USDigital, Inc.*,

    443 B.R. 22 (Bankr. D. Del. 2011) .................................................................................24

*In re VistaCare Grp., LLC*,

    678 F.3d 218 (3d Cir. 2012) ...........................................................................................12

*Langbord v. United States Dep't of Treasury*,

    832 F.3d 170 (3d Cir. 2016) ...........................................................................................10

*Maritime Elec. Co., Inc. v. United Jersey Bank*,

    959 F.2d 1194 (3d Cir. 1991) ...........................................................................................9

*McCartney v. Integra Nat. Bank North*,

    106 F.3d 506 (3d Cir. 1997) ...........................................................................................11

*McDonnell v. Gilbert (In re Gilbert)*,

    642 B.R. 687 (Bankr. D.N.J. 2022) ................................................................................18

*Mervyn's LLC v. Lubert–Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*,

    426 B.R. 488 (Bankr. D. Del. 2010) ..............................................................................19

*Miller v. ANConnect, LLC (In re Our Alchemy, LLC)*,

    Nos. 16-11596 (KG), 18-50633 (KG), 2019 Bankr. LEXIS 2906 (Bankr. D. Del. Sept. 16, 2019) ................................................................................................................................22

*OHC Liquid. Tr. v. Nucor Corp. (In re Oakwood Homes Corp.)*,

    325 B.R. 696 (Bankr. D. Del. 2005) ..............................................................................19

*Ondeo Nalco Co. v. EKA Chemicals, Inc.*,

    No. CIV.A.01-537-SLR, 2002 WL 1458853 (D. Del. June 10, 2002) ..................................15

*Phillips v. Cnty. of Allegheny*,

    515 F.3d 224 (3d Cir. 2008) ................................................................14

*Reilly v. Ceridian Corp.*,

    664 F.3d 38 (3d Cir. 2011) ..................................................................14

*Schmidt v. U.S. Marshal Serv. (In re Maria Villareal)*,

    No. 06–70358, 2007 WL 470507 (Bankr. S.D. Tex. Feb. 8, 2007) ........................10

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,

    742 F.2d 786 (3d Cir. 1984) ................................................................21

*Stoe v. Flaherty*,

    436 F.3d 209 (3d Cir. 2006) ................................................................30

*Taylor v. Sturgell*,

    553 U.S. 880 (2008) ..........................................................................16

*THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*,

    No. 12-13398 (MFW), 2016 WL 1599798 (Bankr. D. Del. Apr. 18, 2016) .....................21, 24

*United States v. A Parcel of Land Known as 92 Buena Vista Ave.*,

    507 U.S. 111 (1993) ..........................................................................10

**STATUTES AND RULES**

11 U.S.C. § 362 ..................................................................................8, 9, 10, 11

11 U.S.C. § 541 ..................................................................................26

11 U.S.C. § 548(a) ..............................................................................19, 23

11 U.S.C. § 550 ..................................................................................24

11 U.S.C. § 1520 ................................................................................9, 29

28 U.S.C. § 1332(c)(1) ..........................................................................27

28 U.S.C. § 1334 ................................................................................ passim

Companies Winding Up Amendment Act of The Bahamas §§192-93 ...........................7

AMERICAS 120697331

Fed. R. Bankr. P. 7008 ...................................................................................................14

Fed. R. Bankr. P. 7012 ......................................................................................13, 14, 17

Fed. R. Bankr. P. 7019 ...................................................................................................15

Fed. R. Civ. P. 8 ..................................................................................................... passim

Fed. R. Civ. P. 9(b) .................................................................................................19, 22

Fed. R. Civ. P. 12 ............................................................................................13, 14, 15

Fed. R. Civ. P. 19 ............................................................................................14, 15, 16

Federal Declaratory Judgment Act .................................................................................13

## MISCELLANEOUS

BLACK'S LAW DICTIONARY (11th ed. 2019) ..................................................................14

'This Company Was Uniquely Positioned to Fail:' FTX Group CEO John Ray Testimony,
    YOUTUBE (Dec. 13, 2022) ......................................................................................4

AMERICAS 120697331

FTX Digital Markets Ltd. ("**FTX Digital**"), Brian C. Simms KC, Kevin G. Cambridge, and Peter Greaves, in their capacity as the duly appointed joint provisional liquidators of FTX Digital and foreign representatives of the Provisional Liquidation of FTX Digital (the "**JPLs**" and, together with FTX Digital, the "**Defendants**"), submit this memorandum of law (the "**Memorandum**") in support of their motion for entry of an order dismissing the complaint filed in the above-captioned adversary proceeding by Alameda Research LLC ("**Alameda Research**"), Alameda Research Ltd., FTX Trading Limited ("**FTX Trading**"), West Realm Shires, Inc. and West Realm Shires Services, Inc. ("**FTX US**"; collectively, "**Plaintiffs**" or "**U.S. Debtors**") or, in the alternative, to abstain from ruling on Counts I-IV in deference to The Bahamas Court, filed contemporaneously herewith (the "**Motion**").  The Defendants respectfully state as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      Since the inception of these cases, FTX Digital and the JPLs have repeatedly noted the existence of various disputes with respect to the identity and location of customers of the FTX Group.  They did so that all parties in these cases and the two courts involved can work cooperatively towards a consensual resolution process.  While the U.S. Debtors have continually acknowledged that such disputes exist, they have avoided any meaningful discussion as to how a consensual process might unfold, and have instead tried to avoid any attempts to establish an organized resolution process for determining how and when which jurisdiction—the U.S. or The Bahamas—would decide which issues.  Accordingly, during a Zoom conference on March 15, counsel for FTX Digital and the JPLs indicated that FTX Digital could no longer abide by the U.S. Debtors' delays and would be seeking to lift the stay in the U.S. chapter 11 cases so that they could at least seek permission to invoke the jurisdiction of The Bahamas Court to get the process rolling.

2.      The U.S. Debtors' response to this news was underhanded.  Instead of attempting any form of consensus, the U.S. Debtors hastily cobbled together the Complaint and filed it four days later—on a Sunday—admitting in the first paragraph that their preemptive filing is "about venue."  As is obvious from its face, the Complaint patently attempts to seize venue and control over each and every customer and asset of the FTX Group, including those indisputably belonging to FTX Digital.  Notwithstanding their execution of the Cooperation Agreement and the plain terms of the order recognizing FTX Digital's Bahamian proceeding, the U.S. Debtors' hope is that this Court will, to the absolute exclusion of The Bahamas Court, address a host of contractual interpretation issues critical to both proceedings.  And, in an attempt to ensure that the process would be as extended, expensive, and inflammatory as possible, the U.S. Debtors added several barebones claims arising under chapter 5 of the Bankruptcy Code, requesting that this Court essentially avoid every purported "transaction" in which FTX Digital was ever involved, without specifying any of the required elements of a properly pleaded avoidance claim.

3.      Even if the U.S. Debtors' insecure behavior could be ignored, the Complaint should be dismissed for a number of reasons.  As an initial matter, and as set forth in Section I, *infra*, this Adversary Proceeding cannot move forward because it constitutes a direct and willful violation of the automatic stay established in the order recognizing FTX Digital's chapter 15 proceeding.  As an obvious intentional stay violation, the filing of the Complaint is void *ab initio*.  Even if the Court were to look past the U.S. Debtors' transgressions, the Complaint still fails as a matter of law.  As set forth in Section II, *infra*, each of the requested declaratory judgments regarding the contractual relationships between the U.S. Debtors, FTX Digital, and all of the International Customers cannot stand for the simple but critical reason that none of the International Customers have been joined to this action.  Finally, as set forth in Section III, *infra*, none of the avoidance

2

claims come close to meeting the pleading standards applicable in this jurisdiction and, therefore, all should be dismissed with prejudice.

4.      There may be, however, one silver lining to the Complaint—it has forced the U.S. Debtors to finally realize that where, when, and how issues relating to whose customers and assets are mapped to which entity in the FTX Group must be decided in a court, as opposed to being assumed or dictated by the unsupported statements of their professionals.  And, to the extent that the U.S. Debtors can find a proper procedural mechanism for addressing the rights of creditors under the Terms of Service (or to the extent that the Court determines that they need not do so), this Court and The Bahamas Court now have the necessary jurisdictional predicate to discuss, at the very least, the contours of a resolution process.  To that end, as set forth in Section IV, *infra*, Defendants respectfully request that, should this Court allow the declaratory judgment claims to proceed, this Court abstain from hearing those claims in favor of adjudication in The Bahamas Court, which is best suited to reaching a rapid, comprehensive, and efficient result.

5.      For these and the following reasons, Defendants respectfully request that this Court grant the Motion.

## **BACKGROUND**

### I.      **FTX Trading**

6.      FTX Trading, a U.S. Debtor, was incorporated on April 2, 2019 under the laws of Antigua and Barbuda.  *See* Compl. ¶¶ 13, 19.  FTX Trading was originally based, along with the rest of the FTX Group[2] in Hong Kong, China.  *See* Chase Decl. Ex. A.[3]

---

[2] Capitalized terms not defined herein have the meaning ascribed to them in the Complaint.

[3] In support of the Motion and this Memorandum, FTX Digital and the JPLs rely upon and incorporate by reference the Declaration of Ashley Rona Chase, dated May 8, 2023 (the "**Chase Declaration**") filed simultaneously herewith.

3

7.     Initially, FTX Trading was responsible for running FTX's international digital asset exchange platform.   Through that platform, the FTX Group ultimately transacted with approximately 7.6 million customers all located outside the United States (the "**International Customers**").  'This Company Was Uniquely Positioned to Fail:' FTX Group CEO John Ray Testimony, YOUTUBE, at 1:18:40-1:19:00 (Dec. 13, 2022) ("**Ray Testimony**").  U.S. persons were *not* permitted to trade on FTX.com.  *See id.* at 21:25-22:00, 27:50-28:10; *Declaration of John J. Ray III in Support of the Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 24] ("**First Day Declaration**"), ¶ 33 ("The FTX.com platform is not available to U.S. Users").

8.     The Commonwealth of The Bahamas was one of the first jurisdictions to implement a regulated exchange system for cryptocurrency (the "**DARE Act**"), which appealed to the FTX Group for its ability to attract institutional funds.  Compl. ¶ 15.  In response to the passage of the DARE Act, beginning in the latter half of 2021, the FTX Group publicly moved its headquarters from Hong Kong to The Bahamas.  *See* First Day Hr'g. at 28:12-15 ("the company . . . went to Hong Kong . . . it went to the Bahamas").

## II.     FTX Digital

9.     In July 2021, FTX Digital was incorporated in The Bahamas.  FTX Digital was registered as a digital asset business under the DARE Act on September 10, 2021.  Compl. ¶ 21. FTX Digital was and is the only FTX Group entity licensed in The Bahamas to run the FTX International Platform for most of the products on the platform, which constituted approximately 90% of the trades and over $1billion in fees.[4]

---

[4] By way of context, FTX Trading could not apply for a license under the DARE Act because certain products could not be registered in The Bahamas.  Therefore, after the migration of the regulated products to FTX Digital, FTX Trading remained the provider for the unregulated products, which constituted a minority of products on the platform.

AMERICAS 120697331

10.     FTX's relocation to The Bahamas was substantial.   FTX planned for its headquarters to sit on 4.95 acres "featur[ing] two boutique hotel buildings . . . an athletic and wellness area; a theatre; auditorium; conference centre; café/restaurant; retail; a daycare centre; and 'vertical farm.'"  *See* Chase Decl. Ex. B.  Seven hundred FTX employees would eventually live and work in The Bahamas.  *Id.*  FTX intended to host "[l]arge events . . . on a quarterly basis, which [were] expected to draw up to 800 additional guests to the site."  *Id.*

11.     Throughout its existence, both prior to and after its relocation to The Bahamas, the FTX Group established legal relationships through various terms of service agreed to through electronic assent.  On May 13, 2022, the FTX Group uploaded new terms of service ("**2022 Terms of Service**") to the FTX.com site.   International Customers then accepted those terms automatically by using any of the services on the FTX International Platform (as is typical in the digital age), and existing customers had agreed to the novation of their rights from FTX Trading under the superseded Terms of Service.   The 2022 Terms of Service established the legal relationship between the International Customers on the one hand and FTX Trading "or a Service Provider" (*i.e.*, FTX Digital) on the other.   Any International Customer who accessed an existing account or created a new account on or after May 13, 2022 agreed that their account relationship would be with FTX Digital.[5]  The 2022 Terms of Service are governed by English law.

12.     Six months later, on November 10, 2022, the Securities Commission of The Bahamas suspended FTX Digital's registration and petitioned The Bahamas Court for the provisional liquidation of FTX Digital, which The Bahamas Court granted (the "**Provisional Liquidation**").  The Bahamas Court appointed Brian Simms KC as provisional liquidator that day.

---

[5] *See generally Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay Does Not Apply to, or in the Alternative Relief from the Stay for Filing of the Application in the Supreme Court of the Commonwealth of The Bahamas Seeking Resolution of Non-US Law and Other Issues* [Dkt. No. 1192] ("**JPLs' Stay Motion**"); *see also* Chase Decl. Ex. C at 1.3.

AMERICAS 120697331

On November 14, 2022, the Bahamas Court appointed Kevin G. Cambridge and Peter Greaves as additional joint provisional liquidators. Under the Provisional Liquidation order, the JPLs displaced FTX Digital's officers and directors and were obligated to preserve and maximize the value of FTX Digital's assets for the benefit of creditors.  On November 11 and November 14, FTX Trading, along with the other U.S. Debtors, commenced these chapter 11 cases.

## III.    Procedural History

13.    On January 6, 2023, the JPLs and the U.S. Debtors entered a cooperation agreement (the "**Cooperation Agreement**").  *See* Settlement And Cooperation Agreement dated January 6, 2023, Case No. 22-11068 [Dkt No. 402], Exhibit 1.[6]  The Cooperation Agreement, among other things, mandates that the U.S. Debtors and the JPLs "work together in good faith to determine ownership of assets that are subject to competing claims" and "[w]here one Party wishes to resolve a dispute . . . such Party may *upon reasonable notice to the other party* proceed with litigation[.]"  *Id.* ¶ 11 (emphasis added).  The Cooperation Agreement also recognizes that FTX Digital "shall be primarily responsible for recovering value from . . . all real and personal property and bank and security accounts in the name of FTX DM, regardless of where located."  *Id.* ¶ 4.

14.    The Cooperation Agreement intentionally does not compromise any rights or obligations arising from the novation/migration of International Customers to FTX Digital.  *See id.* ¶ 10.  The Cooperation Agreement also does not require The Bahamas Court "to defer to the decisions of any foreign court (or alter a *de novo* standard of review) relating to any matter raised by the JPLs in The Bahamas Proceedings with respect to property of the estate of FTX [Digital] (including without limitation the scope of property of the estate, the application or extension of the

---

[6] This Court approved the Cooperation Agreement on February 9, 2023.  [Dkt. No. 683].  The Bahamas Court also approved the Cooperation Agreement.

automatic stay or the compromise or discharge of estate or third party claims in connection with a plan of reorganization)." *Id.* ¶ 13. A parallel provision addresses the role of this Court. *Id.* ¶ 12.

15.     In accordance with their obligations under the Cooperation Agreement and with the hope of achieving an efficient resolution of the legal issues concerning the identification and protection of FTX Digital's accountholders, customers, and creditors (the "**Non-U.S. Law Customer Issues**"), the JPLs sought for months to jointly tee up a legal process for accountholder determinations with the U.S. Debtors. Having had no good-faith engagement, the JPLs sent the U.S. Debtors a draft directions application (the "**Application**") on March 9, 2023. On March 13, 2023, in response to the U.S. Debtors' refusals to engage on the Application, the JPLs communicated their intent to seek leave from The Bahamas Court to file the JPLs' Stay Motion in the chapter 11 proceeding.[7]

16.     On March 15, 2023, in accordance with this Court's Local Rules and the Cooperation Agreement, the JPLs met and conferred with the U.S. Debtors in an attempt to discuss a consensual framework to resolve the Non-U.S. Law Customer Issues. The U.S. Debtors' intransigence towards the JPLs and any cross-border cooperation continued throughout that meeting, which ended with the U.S. Debtors' assurances that they would consider the issues raised. Over the following weekend, the U.S. Debtors commenced this Adversary Proceeding on Sunday, March 19, 2023 with an hour's notice to the JPLs' counsel. The U.S. Debtors sought neither permission from The Bahamas Court to assert claims against the JPLs nor to lift FTX Digital's stay in the chapter 15 case.[8]

---

[7] This motion was ultimately filed on March 29, 2023. *See* JPLs' Stay Motion.

[8] Similar to the Bankruptcy Code, the Companies Winding Up Amendment Act of The Bahamas §§ 192-93 imposes a stay in connection with FTX Digital's liquidation proceedings, which has extraterritorial effect and extends to proceedings against the assets of the company in liquidation. The U.S. Debtors made no attempt to comply with those procedures either.

AMERICAS 120697331

17.     In contrast to the U.S. Debtors' precipitous actions, the JPLs then actively sought the approval of both this Court and The Bahamas Court to commence an action to resolve the Non-U.S. Law Customer Issues.  On March 17, the U.S. Debtors appeared in The Bahamas Court and were heard on the motion for leave to file the JPLs' Stay Motion.  The U.S. Debtors did not object to that motion or the terms in the resulting order, which The Bahamas Court entered on March 21, 2023 ("**Bahamas Lift Stay Order**").  *See* Chase Decl. Ex. D.  The Bahamas Lift Stay Order recognized that "the issues raised by [FTX Digital's] officers, the JPLs, in the proposed [Application] is *fundamental* to the progress of the provisional liquidation of [FTX Digital] in this Honorable Court."  *Id.* (emphasis added).  And, on March 29, the JPLs filed their motion seeking a declaration that the stay did not apply, or, in the alternative, to lift it.

18.     On April 5, 2023, at the JPLs' request, the JPLs and the U.S. Debtors met and conferred regarding the Adversary Proceeding.  During that conference, among other things, the JPLs requested that the U.S. Debtors dismiss or stay prosecution of Counts V-VII without prejudice.  The U.S. Debtors declined, and the Motion follows.

## ARGUMENT

## I.     The Adversary Proceeding Is Void

19.     Before addressing the many deficiencies in the U.S. Debtors' peremptory Complaint, there are substantial questions as to whether the Adversary Proceeding can proceed at all.  In fact, it cannot.

### A.     The Adversary Proceeding Violates FTX Digital's Chapter 15 Recognition Order

20.     *First*, this Adversary Proceeding is void as a direct, willful violation of FTX Digital's chapter 15 Recognition Order and section 362 of the Code.  *Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief*, Case No. 22-11217 [Dkt. No. 129] (the

8

"**Recognition Order**").  The Recognition Order states that "[a]ll relief and protection afforded to foreign main proceedings under section 1520 of the Bankruptcy Code is hereby granted to the Bahamian Provisional Liquidation, FTX Digital, FTX Digital's property located in the United States, and the Joint Provisional Liquidators, as applicable, ***including application of the sections 1520(a) and 362 of the Bankruptcy Code stay to bar actions against FTX Digital*** and/or property of FTX Digital located within the territorial jurisdiction of the United States upon entry of this Order, subject in each case to Paragraphs 9 and 15 below." *Id.* ¶ 4 (emphasis added).

21.     The U.S. Debtors agreed to the form of the Recognition Order before it was submitted for entry. *See id.* ¶ G.  Yet, less than five weeks later, the U.S. Debtors commenced the Adversary Proceeding in their chapter 11 cases in clear and knowing violation of sections 362(a)(1), 362(a)(3), and, therefore, section 1520 of the Code.

22.     Each declaratory judgment count of the Complaint names FTX Digital as a defendant in violation of section 362(a)(1). *See* 11 U.S.C. § 362(a)(1); *In re Peregrine Sys., Inc.*, No. 02-12740, 2005 WL 2401955, at *2 (D. Del. Sept. 29, 2005) (affirming that declaratory judgment action to determine whether third party was responsible for injury to debtor was a "judicial, administrative, or other action" under § 362(a)(1) because the bankruptcy court found it "could conceivably have any effect on the estate being administered in bankruptcy").  "[A]bsent relief from the stay, actions and proceedings against a debtor are void, not voidable." *In re Peregrine Sys., Inc.*, 314 B.R. 31, 44 (Bankr. D. Del. 2004), *rev'd on other grounds*, No. 02-12740, 2005 WL 2401955 (D. Del. Sept. 29, 2005) (citing *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991).

23.     The Adversary Proceeding is also void as an act to obtain possession of, or to exercise control over, FTX Digital's property in the United States—including property that the

9

U.S. Debtors have conceded belongs to FTX Digital.  *See* 11 U.S.C. § 362(a)(3); *see also*
Cooperation Agreement ¶ 4.  The Contract Claims (defined below) seek various declarations
regarding FTX Digital's property[9] by requesting that this Court declare that FTX Digital has no
rights in estate assets.  *See In re Glob. Indus. Techs., Inc.*, 303 B.R. 753, 760 (Bankr. W.D. Pa.
2004), *vacated in part on other grounds*, 2004 WL 555418 (Bankr. W.D. Pa. Feb. 3, 2004) (holding
that "a declaratory judgment action against a debtor is an act to exercise control over property of
the estate [] insofar as it seeks to affect [] estate property") (internal citations omitted).
Specifically, the Contract Claims ask this Court to enter an order declaring that FTX Digital has
no ownership interest in the bank accounts at Moonstone and Silvergate that are held *in FTX
Digital's own name* in the United States.[10]  Compl. ¶¶ 53-84; *see also In re FBI Wind Down, Inc.*,
614 B.R. 460, 475 (Bankr. D. Del. 2020) ("It is 'well-settled case law' that any bank accounts
under the legal title of the debtor, as well as any deposits in such account credited to the debtor,
are presumptively considered property of the debtor's estate.").  The Recognition Order explicitly
protects FTX Digital's property located in the United States from any such actions and provides

---

[9] That the U.S. Debtors dispute ownership over the property is of no moment.  *See In re Levenstein*, 371
B.R. 45, 48 (Bankr. S.D.N.Y. 2007) (holding that the debtor's marital interest in certain property was
"sufficient to invoke the protection of the automatic stay") (citing *Brown v. Chesnut (In re Chesnut)*, 422
F.3d 298, 303 (5th Cir. 2005) ("Where seized property is arguable property, it is no answer for the creditor
to defend foreclosure by claiming that the property was not properly covered by the stay.") and *Schmidt v.
U.S. Marshal Serv. (In re Maria Villareal)*, No. 06–70358, 2007 WL 470507, *2 (Bankr. S.D. Tex. Feb. 8,
2007) ("When property is only arguably property of the estate, the automatic stay applies.")).

[10] Upon information and belief, the U.S. Debtors are working with the U.S. Department of Justice to have
the latter prevent FTX Digital from recovering its own assets.  *See* Apr. 12, 2023 Hr'g. Tr. At 10:7-10 ("We
also appreciate the U.S. criminal authorities working in parallel with us to secure assets. This includes
approximately 100 million in cash in the name of FTX Digital").  The government's seizure of cash,
however, does not amount to a transfer of title unless and until a court enters a forfeiture order.  *See
Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 183 (3d Cir. 2016) ("a seizure alone does not
initiate a forfeiture proceeding because it does not implicate a transfer of legal title") (citing *United States
v. A Parcel of Land Known as 92 Buena Vista Ave.*, 507 U.S. 111, 125 (1993) (plurality opinion) ("It has
been proved that in all forfeitures accruing at common law, nothing vests in the government *until some
legal step shall be taken* for the assertion of its right") (emphasis added).

AMERICAS 120697331

that "[a]ll of the property of FTX Digital within the territorial jurisdiction of the United States is entrusted to the Joint Provisional Liquidators."  Recognition Order ¶¶ 4, 6.

24.    In addition, the Chapter 5 Claims (defined below) explicitly seek to avoid and recover—*i.e.*, obtain possession of and exercise control over—any property that was transferred "to or through" FTX Digital (without meaningful specification as to what that property is).  Compl. ¶¶ 85-102.  This is a clear violation of section 362(a)(3) and an attack on the very purpose of chapter 15.  *See In re ABC Learning Centres Ltd.*, 445 B.R. 318, 343 (Bankr. D. Del. 2010) ("The imposition of an automatic stay upon recognition of a foreign main proceeding is necessary to ensure that the goals of Chapter 15—including cooperation between U.S. courts and foreign courts, fair and efficient administration of cross-border insolvencies, and the protection and maximization of the value of the debtors'[] assets—are met.").

25.    The automatic stay also renders the (duplicative) claims alleged against the JPLs void because all of the allegations in the Complaint against the JPLs are for actions the JPLs took in their capacity as FTX Digital's court-appointed representatives.  *See In re Irish Bank Resol. Corp. Ltd.*, No. 13-12159-CSS, 2019 WL 4740249, at *5 (D. Del. Sept. 27, 2019) (recognizing that the automatic stay bars actions against non-debtors where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor") (quoting *McCartney v. Integra Nat. Bank North*, 106 F.3d 506, 510 (3d Cir. 1997)). Extending the protections of the automatic stay to the JPLs "is essential to [FTX Digital's] efforts of reorganization."  *Id.* at *5-6 (acknowledging that claims against foreign representatives would "have an immediate adverse economic consequence for the debtor's estate" by, for instance, threatening the loss of debtor funds or personnel).  Further, any costs incurred in defending the

JPLs in the Adversary Proceeding, as well as any money judgment entered against the JPLs, would be indemnified out of FTX Digital's assets, making the claims asserted against them de facto actions against FTX Digital. The Adversary Proceeding is thus void *ab initio*.

**B.      The Claims Against The JPLs Are Improper**

26.      *Second*, even were this Court to find that FTX Digital's automatic stay does not extend to the JPLs, the claims against the JPLs are also improper without leave from The Bahamas Court. For nearly 150 years, courts have recognized that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 127 (1881);[11] *In re VistaCare Grp., LLC*, 678 F.3d 218, 225 (3d Cir. 2012) (rejecting the bankruptcy court's description of the *Barton* doctrine as "antiquated and probably not controlling" and holding that it "has continuing validity"). The *Barton* doctrine was created to protect court-appointed fiduciaries, such as liquidators, from precisely what the U.S. Debtors attempt to do here: (a) distract the JPLs from fulfilling their mandate to maintain the value of FTX Digital's assets for the benefit of its creditors, and (b) impose liability on the JPLs for acting within this duly authorized mandate. In the absence of the *Barton* doctrine, individuals—like the JPLs—would be deterred from accepting similar fiduciary appointments. *See VistaCare Grp.*, 678 F.3d. at 230 (observing the "burden[]" a trustee would face in having to defend against suits in other courts and that, without the appointing court's consent to sue the trustee, "trusteeship would become a 'more irksome duty,' thereby discouraging qualified people from serving").

---

[11] In *Barton*, the plaintiff was injured during a train derailment when the railroad was operated under a receiver appointed by a state court. The plaintiff sued the receiver for negligence. The Supreme Court held that "a court of another State [does] not [have] jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against [the receiver]." *Barton* 104 U.S. at 137. The Court focused on the "advantage" a plaintiff would gain over other creditors if the rule were otherwise and noted that "it would become impossible for the [appointing] court to discharge its duty to preserve the property and distribute its proceeds among those entitled to it according to their equities and priorities." *Id.* at 136.

12

27.     The JPLs were appointed by The Bahamas Court and are the functional equivalent of trustees appointed in a U.S. chapter 7 or chapter 11 proceeding.  The U.S. Debtors did not seek leave to file the Complaint from the JPLs' appointing court.  As such, the causes of action against the JPLs should all be dismissed with prejudice.[12]

## II.     The Contract Claims Should Be Dismissed Under Rule 12

28.     In Counts I-IV of the Complaint, the U.S. Debtors seek to have this Court interpret various intercompany and third-party contractual arrangements under the Federal Declaratory Judgment Act.  *See* Compl. ¶¶ 54, 62, 70, 78.  Specifically, they seek a declaratory judgment that, pursuant to the "Terms of Service," FTX Digital has no ownership interest of any kind in:

- any cryptocurrency owned by or in the custody of the U.S. Debtors (Count I);

- any fiat currency owned by or in the custody of the U.S. Debtors (Count II);

- the intellectual property owned by or in the custody of the U.S. Debtors (Count III); or

- any customer information owned by or in the custody of the U.S. Debtors (Count IV).

Compl. ¶¶ 55-59, 63-66, 71-74, 79-82.

29.     Each of these claims (collectively, the "**Contract Claims**") should be dismissed under Rule 12 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of Bankruptcy Procedure 7012, which provides that a complaint should be dismissed if it fails to state

---

[12] Even if the *Barton* doctrine does not apply to the JPLs (it does), the scant, alternative allegations in the Chapter 5 Claims are not properly asserted against the JPLs and should be dismissed.  As an initial matter, FTX Digital—not the JPLs—is the alleged transferee of the nondescript transfers.  *See* Compl. ¶¶ 85-102.  The U.S. Debtors could not (and did not) allege that the JPLs are "transferees."  *See id.* ¶¶ 99-102 (FTX Digital "was the initial transferee of the Avoidable Transfers and one or more of the J. Doe defendants may have been the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfers were made").  The JPLs were not appointed or otherwise involved with FTX Digital until November 10 and November 14, 2022.  The Chapter 5 Claims do not allege that any transfer at issue took place on or after those dates.

AMERICAS 120697331

a claim upon which relief may be granted or if it fails to join a party under Rule 19.[13]  *See* Fed. R.

Civ. P. 12(b)(6)-(7); Fed. R. Bankr. P. 7012.

### A.    Count III Fails to State a Claim for Relief

30.    To plead a claim under Rule 8(a)(2) of the Federal Rules of Civil Procedure, made

applicable by Federal Rule of Bankruptcy Procedure 7008, a plaintiff must provide a "showing,

rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555, n.3 (2007).  The Third Circuit has interpreted Supreme Court precedent to recognize that there

will be times that "the factual detail in a complaint is so undeveloped that it does not provide a

defendant the type of notice of claim which is contemplated by Rule 8." *Phillips v. Cnty. of*

*Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 550 U.S. 544 (2007) and *Erickson*

*v. Pardus*, 551 U.S. 89 (2007)).  A cause of action that does not provide a defendant with the

requisite notice should be dismissed for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).

31.    Count III specifically seeks a declaration that FTX Digital has no ownership interest

"in the intellectual property owned by or in the custody of" the U.S. Debtors.  Compl. ¶ 76.

"Intellectual property" as a term, however, does not refer to anything specific, but rather

encompasses "[a] category of intangible rights protecting commercially valuable products of the

human intellect [such as] trademark, copyright, and patent rights, but also includes trade-secret

rights, publicity rights, moral rights, and rights against unfair competition."  "Intellectual

Property," Black's Law Dictionary (11th ed. 2019).  In their Complaint, the U.S. Debtors have

not identified in any respect what "intellectual property" this Court is supposed to find falls outside

---

[13] As an initial matter, FTX US has not demonstrated standing to bring any of the Contract Claims.  *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) ("It is the plaintiffs' burden, at the pleading stage, to establish standing.").  FTX US was not a party to the Terms of Service at issue, which are entirely separate from those applicable to U.S. customers.  *See, e.g.*, 2022 Terms of Service ("Our services are not offered to entities or persons who have their registered office or place of residence in the United States[.]").

14

of FTX Digital's estate.  *See Ondeo Nalco Co. v. EKA Chemicals, Inc.*, No. CIV.A.01-537-SLR, 2002 WL 1458853, at *1 (D. Del. June 10, 2002) (dismissing counterclaims that insufficiently identified which products are accused of infringement as "too vague to provide plaintiff with fair notice").  Given that Defendants have no fair notice of what "intellectual property" the U.S. Debtors intend to grab for themselves, this Court should therefore dismiss Count III, with leave to replead.

### B.    The Contract Claims Fail to Join All Necessary Parties

32.    Each of the Contract Claims fail for a separate, but critically important reason. Under Bankruptcy Rule 7019, if feasible, a plaintiff must join all persons who (1) in their "absence, the court cannot accord complete relief among existing parties;" or (2) "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a); *see also* Fed. R. Civ. P. 12(b)(7) (listing failure to join a party under Rule 19 as one ground for dismissal).

33.    Each of the Contract Claims seek a declaration regarding the Terms of Service but omit an entire category of persons necessary to effectuate complete, binding, non-duplicative relief regarding those Terms of Service: the International Customers.  The Terms of Service acts as the operative agreement among each International Customer and FTX Trading and any "Service Provider"—here, FTX Digital.  This Court cannot accord complete relief regarding the parties' respective property interests under those agreements without joining the International Customers because those customers can properly claim an interest in the same property under the same contracts.  *See In re Rouge Indus., Inc.*, 326 B.R. 55, 59 (Bankr. D. Del. 2005) (holding that a party

claiming ownership of defendant's accounts receivable is a necessary party when plaintiff seeks a determination that defendant owns the receivable due).  For instance, certain of the International Customers who may be defendants in ongoing or future clawback proceedings will undoubtedly seek to establish their own rights in the consideration at the time of transfer.  Without the ability to bind the International Customers to a ruling interpreting property rights under the Terms of Service,[14] however, the U.S. Debtors will leave FTX Digital (or the U.S. Debtors, as appropriate) open to great cost of (re)litigating its standing to pursue any clawback action to recover some of the property at issue from transferees.

34.    For the same reason, the U.S. Debtors' failure to join the International Customers exposes the parties to the Adversary Proceeding to "substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(B)(ii).

35.    The International Customers are also necessary parties because resolving the Contract Claims without them would impair or impede their ability to protect any interests they have in the same property.  *See* Fed. R. Civ. P 19(a)(1)(B)(i); *Downs v. Andrews*, 639 F. App'x 816, 822-23 (3d Cir. 2016) (concurrence) (affirming the district court's finding that Remar was a necessary party under Rule 19(a)(1)(B) because it was a party to the contract underlying the plaintiffs' claims, Remar may "institute some action against the defendants in the future," and the agreement suggested that Remar "may still retain an interest" in the fund and mortgage notes at issue); *see also In re Image Masters, Inc.*, 421 B.R. 164, 188-90 (Bankr. E.D. Pa. 2009), *aff'd on these grounds, vacated on other grounds sub nom. Image Masters, Inc. v. Chase Home Fin.*, 489 B.R. 375 (E.D. Pa. 2013) (holding that homeowners were necessary parties to action seeking to

---

[14] "It is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."  *See Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) (citation omitted).

AMERICAS 120697331

clawback transfers made by third-party to lender-banks on homeowners' behalf because success on the merits would have "potential ramifications against the [non-party] homeowners," including liability to the defendant).  For instance, a determination by this Court on the Contract Claims will not bind the International Customers as to which entity they are potentially liable to in a clawback proceeding or against which entity they should file a claim.

36.    Importantly, the U.S. Debtors will have an adequate remedy if the Contract Claims were dismissed because they can participate in the determination on the underlying legal issues from The Bahamas Court and then seek implementation of that ruling in the U.S. chapter 11 cases.  Thus, the Court should dismiss each of the Contract Claims with prejudice, absent joinder of all parties necessary to adjudicate all parties' rights under the Terms of Service.

### III.    The Chapter 5 Claims Should Be Dismissed For Failure To State A Claim

37.    While there may be a legitimate debate over which Contract Claims should be litigated in which court, the fraudulent conveyance claims in Counts V-VII appear to be nothing more than a tactical effort to make sure that the issues framed in the Contract Claims never get resolved.  All these claims (collectively, the "**Chapter 5 Claims**") can and should be dismissed for six independent reasons under Bankruptcy Rule 7012.[15]

#### A.    Counts V and VI Are Not Plausible

38.    "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *In re Cred Inc.*, No. 20-12836 (JTD), 2023 WL 2940483, at *1 (Bankr. D. Del. Apr. 13, 2023) (quotations omitted) (dismissing fraudulent transfer claims under the *Iqbal* standards).  To meet this standard, "[a] complaint has to 'show' [] an entitlement [to relief] with its facts" and cannot rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

[15] As with the Contract Claims, FTX US—the U.S. customer-facing arm of the FTX Group—has not alleged any standing to bring the Chapter 5 Claims.  *See, supra,* n.13.

AMERICAS 120697331

conclusory statements." *Id.* (internal quotations and citations omitted).  Here, none of the Chapter 5 Claims state a plausible claim for relief and all are therefore ripe for dismissal.

39.     All of the Chapter 5 Claims rely on the U.S. Debtors' allegations that every unspecified "transfer" undertaken by the FTX Group to migrate to The Bahamas was in an effort to defraud International Customers.  Such allegations are conclusory "blanket assertions" that lack the requisite showing of entitlement to relief to satisfy Rule 8.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) ("allegations that . . . are no more than conclusions, are not entitled to the assumption of truth") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *Twombly*, 550 U.S. at 555, n.3 (Rule 8 requires a "showing, rather than a blanket assertion, of entitlement to relief").  They also make no practical sense.  If the intent of moving the FTX Group from Hong Kong was to defraud the International Customers, why then did the conspirators choose to move from a market without comprehensive regulatory certainty to one of the most comprehensive regulatory regimes on the planet?

**B.     Only Actual Transfers Are Actionable Under Chapter 5**

40.     In each of the Chapter 5 Claims, the U.S. Debtors apparently seek to avoid "transfers" that may have been "attempted" but not consummated.  *See, e.g.*, Compl. ¶¶ 51-52, 87, 95-96.  Allegations of an intended, but not executed, transfer fail as a matter of law, as only actual "transfers" matter.  *See In re Plassein Int'l Corp.*, 366 B.R. 318, 326 (Bankr. D. Del. 2007), *aff'd*, 388 B.R. 46 (D. Del. 2008) (dismissing § 544 claim invoking Delaware law "[s]ince no Debtor made a transfer, there is no legal basis for any fraudulent conveyance claim"); *McDonnell v. Gilbert (In re Gilbert)*, 642 B.R. 687, 699, 703 (Bankr. D.N.J. 2022) (dismissing § 548 claims because trustee did "not sufficiently plead that there was a 'transfer'").

18

### C.    The Chapter 5 Claims Lack Adequate Specificity

41.    The Chapter 5 Claims fail because the U.S. Debtors "merely recite[] the statutory language of § 548(a) of the Bankruptcy Code," which does not meet Rule 8's pleading standard as a matter of law.[16]  *See In re Pillowtex Corp.*, 427 B.R. 301, 311 (Bankr. D. Del. 2010) (dismissing constructive fraudulent transfer claim for reciting the statute without providing any factual support); *In re Sunset Aviation, Inc.*, 468 B.R. 641, 650 (Bankr. D. Del. 2011) ("a claim for the avoidance of a transfer under § 548 is insufficient when it simply alleges the statutory elements of a constructive fraud action under section 548(a)(1)(B)") (citation omitted); *In re Glob. Link Telecom Corp.*, 327 B.R. 711, 718 (Bankr. D. Del. 2005) (applying a more liberal standard than Rule 9(b) and dismissing constructive fraudulent transfer claim for reciting the statute without "information on the Debtors' financial status or the value of what was received in exchange").  Here, as demonstrated in the following chart, the U.S. Debtors breached this cardinal rule by simply parroting section 548 without providing any details of the who, what, where, when, and why regarding any specific alleged "transfer:"

| 11 U.S.C. § 548(a)(1)(B) | Complaint, Count V |
|---|---|
| "The trustee may avoid any transfer . . . that was made or incurred on or within 2 years before the date of the filing of the petition. . ." | "The transfers were made within two years of the Petition Date." |
| "if the debtor voluntarily or involuntarily (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and" | "The Plaintiffs did not receive reasonably equivalent value in exchange for the transfers of Plaintiffs' property to or through [FTX Digital] by Plaintiffs.  Indeed, Plaintiffs did not |

---

[16] The Bankruptcy Courts in this District have not consistently determined whether Rule 9(b)'s heightened pleading standard applies to constructive fraudulent transfer claims.  *Compare OHC Liquid. Tr. v. Nucor Corp. (In re Oakwood Homes Corp.)*, 325 B.R. 696, 698 (Bankr. D. Del. 2005) (finding that Rule 9(b) applies to a claim under §§ 544 or 548 "whether it is based upon actual or constructive fraud") (citing cases) *with In re Pillowtex Corp.*, 427 B.R. 301, 310 (Bankr. D. Del. 2010) ("courts in this district have held that claims of constructive fraud (i.e., fraudulent transfers) are evaluated using Rule 8(a)(2)") (citing *Mervyn's LLC v. Lubert–Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 495 (Bankr. D. Del. 2010)).  The Court need not resolve this issue because all Chapter 5 Claims fail even under Rule 8's more lenient standard.

19

| | receive any discernable value or benefit in exchange for the transfer." |
|---|---|
| "(ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;" | "At all times, any transfers of Plaintiffs' property to or through [FTX Digital] were made when Plaintiffs were insolvent. In the alternative, (i) the Plaintiffs became insolvent as a result of the transfers;" |
| "(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;" | "(ii) Plaintiffs were caused by Mr. Bankman-Fried (and/or others acting at his direction) to engage in a business or a transaction for which they had unreasonably small capital;" |
| "(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or" | "(iii) Plaintiffs were caused by Mr. Bankman-Fried (and/or others acting at his direction) to incur debts intended or believed to be beyond the Plaintiffs' ability to pay as such debts matured; or" |
| "(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business." | "(iv) Plaintiffs were caused by the Co-Conspirators to undertake transfers for the benefit of insiders—including the Co-Conspirators themselves—outside of the ordinary course Plaintiffs' businesses." |

42.    Like Count V, Count VI (the intentional fraudulent transfer claim) is also a barebones recitation of the elements of the statute without any information regarding when (or even if) the transfers occurred, whether they went "to or through" FTX Digital, or the value of each transfer.[17]  "This alone is grounds for dismissal."  *See Cred Inc.*, 2023 WL 2940483, at *18-*19 ("the individual transfers are not identified by date or amount.  Additionally, the Complaint also fails to make clear which of the debtor entities made the transfers and which of the three [defendant] entities received them.  Even under the more liberal pleading standard of Rule 8(a),

---

[17] The only semblance of specificity appears to reference a $143M transfer of "fiat currency belonging to FTX Trading and Alameda into accounts in [FTX Digital's] name at [Moonstone] and [Silvergate]." Compl. ¶ 26.  These are the accounts that the Cooperation Agreement requires that FTX Digital "shall be primarily responsible for recovering value from," Cooperation Agreement ¶ 4, and that the Recognition Order "entrust[s] to the Joint Provisional Liquidators," Recognition Order ¶ 6.  But, the U.S. Debtors' current allegations that, in fact, FTX Digital has no legitimate interest in retaining those deposits, do not include a date or demonstrate that any such transfer of cash to those accounts meets the other elements of section 548.

20

this is insufficient"); *In re Glob. Link*, 327 B.R. at 718 ("Fair notice requires something more than a quotation from the statute"); *THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*, No. 12-13398 (MFW), 2016 WL 1599798, at *4 (Bankr. D. Del. Apr. 18, 2016) ("More problematic is that the Plaintiff did not even identify what transfers were made to the Movants.  This is not sufficient."); *In re Aphton Corp.*, 423 B.R. 76, 87 (Bankr. D. Del. 2010) (a complaint must contain allegations of the "date, place or time" of the transfer at issue so that defendants are "on notice of the precise misconduct with which they are charged") (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

43.    The Complaint's other conclusory statements regarding the Chapter 5 Claims are similarly not entitled to a presumption of truth.  *See Cred Inc.*, 2023 WL 2940483, at *18.  For instance, the U.S. Debtors allege that they "did not receive any discernable [sic] value or benefit in exchange for the transfers" and that "any transfers of Plaintiffs' property to or through [FTX Digital] by Mr. Bankman-Fried (and/or others acting at his direction), whether attempted or consummated, were not for reasonably equivalent value in exchange from [FTX Digital]."  Compl. ¶¶ 88, 96(i) (emphasis omitted).  Yet, the U.S. Debtors provide zero details regarding the value of any alleged transfers to support that there was no mutual exchange.[18]  Courts have concluded that a complaint fails to state an avoidance claim when "it does not include, or even reference, the significant value received by [the debtor] pursuant to the overall transaction."  *In re Old CarCo LLC*, 435 B.R. 169, 187 (Bankr. S.D.N.Y. 2010).  The U.S. Debtors' allegations regarding value also contradict others in the Complaint, where the U.S. Debtors admit that they received

---

[18] These allegations also conspicuously ignore that the regulatory license FTX Digital held had significant value and generated further value to FTX Group.  For example, FTX Digital was authorized to transact in a regulated environment so that the FTX Group could continue to attract large institutional investors.

AMERICAS 120697331

quantifiable value from FTX Digital after the New Terms of Service.  *See* Compl. ¶ 41 ("All transactional fees earned under the New Terms of Service were paid to FTX Trading").

### D.   Allegations of Actual Fraudulent Intent Require Significantly More Than Provided by the Complaint

44.    Although Count VI's failure to meet the lower pleading burden in Rule 8 disposes of it outright, as an actual fraud claim, it "must meet the elevated pleading standards of Federal Rule of Civil Procedure 9(b)" to survive this Motion.  *See Cred Inc.*, 2023 WL 2940483, at *18 (quoting *Charys Liquidating Tr. v. Growth Mgmt., LLC (In re Charys Holding Co.)*, No. 08-10289, 2010 Bankr. LEXIS 2073, at *7 (Bankr. D. Del. July 14, 2010)).  In addition to the deficiencies noted above, the U.S. Debtors fall far short of Rule 9(b) in their attempt to plead badges of fraud. Any allegation relying on the U.S. Debtors' insolvency at the time of the transfers and the transfers' "temporal proximity" to the U.S. Debtors' collapse are insufficient because the "failure to specify exactly when the transfers took place precludes [the U.S. Debtors] from establishing these badges of fraud." *Id.* at *19.  Further, lumping all of the "attempted or consummated" transfers into one fraudulent scheme does not exempt the U.S. Debtors from providing the value of each transfer at issue.  *See id.* at *18 (dismissing actual fraudulent transfer claim that did not "include any details regarding the date or amount of the individual transfers") (citing *Miller v. ANConnect, LLC (In re Our Alchemy, LLC)*, Nos. 16-11596 (KG), 18-50633 (KG), 2019 Bankr. LEXIS 2906, at *24 (Bankr. D. Del. Sept. 16, 2019) ("The Complaint does not identify the number of transfers Alchemy made, or the specific dates and amounts of those transfers. Instead, it aggregates the transfers into a lump sum over a one year period. Hence, the Trustee failed to satisfy the heightened pleading standards of Rule 9(b).")).

AMERICAS 120697331

E.     **The Complaint Lacks Other Critical Allegations Regarding the "Transfers" at Issue**

45.     Claims under section 544 fail when the "Complaint attempts to allege a state law fraudulent conveyance action without identifying the applicable state law, the legal standard, or any relevant facts."  *See In re Glob. Link*, 327 B.R. at 718 (dismissing claims brought under § 548(a)(1)(B) "and applicable state law"); *see also In re Aphton Corp.,* 423 B.R. at 87-88 (dismissing "Pennsylvania and/or Delaware Uniform Fraudulent Transfer Act" claims because the complaint did not allege the elements of the relevant statute or "allege the specific facts that meet those elements"); *In re Exide Techs., Inc.*, 299 B.R. 732, 749 (Bankr. D. Del. 2003) (dismissing claims brought under the Uniform Fraudulent Transfer Act and the Uniform Fraudulent Conveyance Act because these statutes "vary from state to state [and] Plaintiffs have failed to identify the state(s) whose laws apply to these claims").  Without identifying the applicable law invoked on a section 544 claim, a defendant cannot adequately and appropriately respond to the allegations.  *See In re Glob. Link*, 327 B.R. at 718 ("the rules do require that the complaint set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him so that the defendant can prepare an adequate answer to the allegations") (citations omitted).  Here, the U.S. Debtors have not identified what "applicable law" they rely on.  Accordingly, the section 544 claims should be dismissed.

46.     Moreover, the U.S. Debtors have not demonstrated they have standing to bring a claim under section 544.  To plead a section 544 claim, a proper plaintiff may "step into the shoes" of a general unsecured creditor and invoke the "applicable law" that such creditor could use outside of the bankruptcy to avoid the alleged transfers.  *See In re Parker School Uniforms, LLC*, 2021 WL 4553016, at *10 (Bankr. D. Del. Oct. 5, 2021) ("If there exists no such creditor, a trustee may not act under section 544(b)(1).") (quoting *In re LSC Wind Down, LLC*, 610 B.R. 779, 784 (Bankr.

AMERICAS 120697331

D. Del. 2020)).  The U.S. Debtors have not identified in the Complaint a single creditor whose shoes they may "step into."  *Cf. In re LSC Wind Down*, 610 B.R. at 786 ("Plaintiff has alleged by name numerous unsecured creditors whose standing it is using to pursue the Defendants[.]").  It is not even clear whether the U.S. Debtors *can* allege the existence of a legitimate triggering creditor because all of the proper International Customers are by definition not citizens of the United States and the U.S. Debtors have not identified what foreign law would therefore be the "applicable law" under section 544(b).

### F.     The Section 550 Claim Fails Along with the Other Chapter 5 Claims

47.     A claim for recovery under section 550 requires a viable voidable transfer claim.  *See* 11 U.S.C. § 550 (permitting recovery on a voidable claim from the initial transferee or any immediate or mediate transferee).  Because the Complaint does not adequately allege a claim for actual or constructive fraudulent transfer, Count VII should be dismissed, as well.[19]  *See THQ Inc. v. Starcom Worldwide, Inc. (In re THQ Inc.)*, No. 12-13398, 2016 WL 1599798, at *4 (Bankr. D. Del. Apr. 18, 2016) ("Because the Court is granting the Motions to Dismiss the preference and fraudulent transfer claims, there is no basis for a claim under section 550(a)."); *In re Sunset Aviation*, 468 B.R. at 651 (dismissing § 550 claim as moot after dismissing the underlying §§ 547 and 548 claims); *In re USDigital, Inc.*, 443 B.R. 22, 40 (Bankr. D. Del. 2011) (same).

### IV.    To The Extent The Contract Claims Are Or Will Be Properly Pleaded, This Court Should Abstain From Ruling On Them In Deference To The Bahamas Court

48.     A court may abstain from hearing a proceeding arising under or related to title 11 "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).  Section 1334(c)(1)'s reference to "State courts" and "State law" includes

---

[19] As stated in Section I.B, *supra*, although Count VII is alleged against "all defendants," the U.S. Debtors could not—and did not—allege that the JPLs are subsequent transferees.  As such, they are not proper defendants for this claim.  *See* Compl. ¶¶ 99-102.

24

foreign proceedings under the doctrine of international comity. *In re CPW Acquisition Corp.*, No. 08-14623 AJG, 2011 WL 830556, at *6 (Bankr. S.D.N.Y. Mar. 3, 2011) (citing cases). There is no "mathematical exercise" for determining abstention is appropriate; however, courts weigh twelve factors in making this assessment:

i. the effect or lack thereof on the efficient administration of the estate;
ii. the extent to which state law issues predominate over bankruptcy issues;
iii. the difficulty or unsettled nature of applicable state law;
iv. the presence of a related proceeding commenced in state or other non-bankruptcy court;
v. the jurisdictional basis, if any, other than section 1334;
vi. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
vii. the substance rather than the form of an asserted "core" proceeding;
viii. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
ix. the burden of the court's docket;
x. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
xi. the existence of a right to a jury trial; and
xii. the presence of non-debtor parties.

*In re Integrated Health Servs., Inc.*, 291 B.R. 615, 619 (Bankr. D. Del. 2003) (citations omitted). All twelve factors weigh in favor of abstention.

49.     *First*, abstaining from hearing the Contract Claims would not negatively affect the efficient administration of the U.S. Debtors' estate. So "little has happened in this Adversary Proceeding" that any potential delay would not be prejudicial. *In re Integrated Health Servs.*, 291 B.R. at 619; *In re Int'l Tobacco Partners, Ltd.*, 462 B.R. 378, 393 (Bankr. E.D.N.Y. 2011) (first factor weighed in favor of abstention when the adversary proceeding was "still in its early stages"). If anything, abstention would promote efficiency because The Bahamas Court is primed to resolve the Non-U.S. Law Customer Issues without the need for legal experts to opine on complicated issues of Bahamas law. *See* JPLs' Stay Motion ¶ 72. Upon a ruling from that Court, this Court could then implement its determinations as it deems fit in adjudicating the proper administration of the U.S. Debtors' estates.

50.     *Second*, foreign law claims predominate because each of the Contract Claims hinges on the law governing the Terms of Services—*i.e.*, English, Antiguan, and/or Bahamian law. *See* JPLs' Stay Motion ¶ 35.  Although the U.S. Debtors attempt to mask the underlying issues by suggesting their requested relief arises under section 541 of the Bankruptcy Code, this facade is transparent.  *See In re OMNA Med. Partners, Inc.*, No. 00-1493 (MFW), 2000 WL 33712302, at *3 (Bankr. D. Del. June 12, 2000) ("While the Debtor seeks to characterize the issues as bankruptcy issues . . . the issues are simply contract interpretation issues and are, by the terms of the contract, governed by Texas law. Thus, there are no uniquely bankruptcy issues that need be decided in this Court.").

51.     *Third*, the Contract Claims involve complex and novel applications of English, Antiguan and Bahamian law.  Deciding these issues in this Court would necessitate the testimony of foreign law experts at significant expense to both the parties and the Court; whereas The Bahamas Court is more familiar and experienced with the applicable English and Commonwealth laws.[20]  Courts routinely recognize that these facts tip the abstention scales.  *See In re OMNA Med. Partners, Inc.*, 2000 WL 33712302, at *3 ("while we are not aware that there are any unsettled or difficult state law questions involved, we believe that the state court is the better forum to make that determination, if there are"); *In re Kessler*, 430 B.R. 155, 167 (Bankr. M.D. Pa. 2010) ("[O]ne of the issues . . . is an unsettled matter of statutory construction of a Pennsylvania, not federal, statute . . . Therefore, this factor weighs in favor of abstention."); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985) (holding that the scales tipped in favor of abstention because the case raised novel issues of state tort and construction law).

---

[20] The Bahamian legal system is based on the English system, with the ultimate appeal court being the Judicial Committee of the Privy Council consisting of a five-judge panel of justices of the Supreme Court of the United Kingdom.

AMERICAS 120697331

52.     *Fourth*, a proceeding to resolve the Non-U.S. Law Customer Issues is underway in The Bahamas.  After months of unsuccessfully seeking the U.S. Debtors' cooperation regarding the Application, the JPLs obtained leave of The Bahamas Court to file their Stay Motion.  Leave from The Bahamas Court and the JPLs' Stay Motion are procedural predicates to filing the Application, which is fully prepared and was shared with the U.S. Debtors on March 9, 2023.  In any event, courts have interpreted this factor more loosely than requiring the commencement of a parallel proceeding.  *See In re CPW Acquisition Corp.*, No. 08-14623 AJG, 2011 WL 830556, at *8 (Bankr. S.D.N.Y. Mar. 3, 2011) (holding that this factor supports abstention even "[t]hough there is no proceeding underway in the U.K. [because] CPW has an adequate remedy under English law in an English forum.").

53.     *Fifth*, this Court would not have jurisdiction over the Contract Claims but for 28 U.S.C. § 1334.  There is no diversity jurisdiction among the parties in that all of the plaintiffs and the defendants are non-U.S. persons.  Compl. ¶¶ 13; *see* 28 U.S.C. § 1332(c)(1) (a corporation is a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").  There also is no federal question jurisdiction as the Contract Claims are not grounded in U.S. law (let alone federal law).

54.     *Sixth*, the Contract Claims are "not inextricably intertwined with the administration of the estate" but are instead inextricably intertwined with interpreting a foreign law governed contract.  *See In re Integrated Health*, 291 B.R. at 621.  The JPLs do not dispute that the outcome of the Application may theoretically "result in an enhanced distribution" for the U.S. Debtors' creditors, but that does not render the proceeding "so related" to the chapter 11 cases as to disfavor abstention.  *Id.*; *cf. In re Maxus Energy Corp.*, 560 B.R. 111, 125 (Bankr. D. Del. 2016) (explaining

27

that "an enhanced distribution in the bankruptcy case," is not sufficient to oppose abstention when assessing the first factor of the permissive abstention test) (citation omitted).

55.     *Seventh*, in substance, the Contract Claims are grounded in foreign law and thus do not constitute a "core" proceeding in these cases.  *See In re Trans World Airlines, Inc.*, 278 B.R. 42, 47-49 (Bankr. D. Del. 2002) (proceeding was non-core because it ultimately sounded in tort and "depend[ed] on an interpretation of state law").  Notably, this factor explicitly urges this Court to disregard the form of the U.S. Debtors' allegations and to focus on the substance of the underlying contract interpretation claim—a non-bankruptcy issue.  *In re Integrated Health Servs., Inc.*, 291 B.R. at 619.  The potential for "an enhanced distribution for creditors in the bankruptcy cases . . . does not mean it is so related to the main case as to warrant our retention of jurisdiction over it."  *Id.* at 621.

56.     *Eighth*, although the Chapter 5 Claims (if properly pleaded) are "core," those claims can easily be severed from the Contract Claims.  *See In re Int'l Tobacco Partners*, 462 B.R. at 394 (state law issues could be severed from Code related issues even though the proceeding was core); *In re Maxus Energy Corporation*, 560 B.R. at 127 (claims could be severed from the core bankruptcy matters even though their resolution "may ultimately impact" the Debtors' estate").[21]

57.     *Ninth*, the Adversary Proceeding would put a heavy burden on this Court's docket such that abstention is proper.  Again, the novel and complex issues raised by the Contract Claims would usurp significant estate and judicial resources.

58.     *Tenth*, the U.S. Debtors commenced the Adversary Proceeding precisely to thwart the JPLs' efforts to have The Bahamas Court expeditiously review the Application.  It is no

---

[21] Indeed, there are several important reasons why the determination of the contractual property issues should not have to await the disposition of the far more expansive, expensive, distracting, and divisive issues of the many frauds underlying the FTX Group's operations.

coincidence that the U.S. Debtors commenced the Adversary Proceeding within days of the JPLs having shared their intent to file the Stay Motion (and ultimately the Application) and did so without providing the contractually agreed to "reasonable notice."  This Court should not reward the U.S. Debtors for ignoring their court-ordered obligations and the chapter 15 automatic stay. *See* Cooperation Agreement ¶¶ 2, 11; 11 U.S.C. § 1520.

59.    *Eleventh*, the U.S. Debtors' right to a jury trial is not implicated, as there is no right to a jury trial of declaratory judgment claims, and the Complaint does not demand a jury trial.

60.    *Twelfth*, FTX Digital is a chapter 15 debtor as are, by extension, the JPLs. Nonetheless, the named "J. Does"—those "who have either directed and/or aided and abetted the actions of FTX [Digital] or others in the formation of FTX [Digital]"—are seemingly non-debtor entities or individuals over whom this Court may or may not have jurisdiction.[22]  *See* Compl. at 2.

61.    Taken together, all twelve abstention factors demonstrate that this Court should abstain in deciding the Contract Claims pursuant to 28 U.S.C. § 1334(c)(1).  Abstention is also consistent with the principles of international comity.  *See In re Regus Bus. Ctr. Corp.*, 301 B.R. 122, 127-29 (Bankr. S.D.N.Y. 2003) (abstention was appropriate when considering international comity because, among other things, (i) the parties to the dispute were headquartered in England; (ii) the agreements at issue were governed by English law; and (iii) the dispute could "be resolved promptly and fully by an English court which specializes in the resolution of such disputes").

62.    Considering only factors two through six and that the JPLs expect The Bahamas Court would rule on the Application expeditiously, this Court also must mandatorily abstain from

---

[22] For instance, this definition appears to implicate the U.S. Debtors' counsel, Sullivan & Cromwell, as well as Peter Maynard & Co, both non-debtor entities who worked with the FTX Group prior to the Petition Date on key transactions.

AMERICAS 120697331

adjudicating the Contract Claims.[23] *See Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006) (listing the factors to consider upon a timely motion for abstention under 28 U.S.C. § 1334(c)(2)).

63.     For the same reasons that abstention is appropriate, this Court could alternatively stay the Contract Claims in favor of the Application. *See Drauschak v. VMP Holdings Ass'n, L.P. (In re Drauschak)*, 481 B.R. 330, 345-46 (Bankr. E.D. Pa. 2012) (explaining that "[t]he factors supporting mandatory abstention . . . including judicial economy, would also justify applying the aforementioned exception to modify the automatic stay").  As was the intention behind the Cooperation Agreement, a stay would allow this Court to at least hear from The Bahamas Court on issues that The Bahamas Court has stated are critical to FTX Digital and its customers and then implement those findings, as appropriate.

## CONCLUSION

WHEREFORE, for the reasons stated above, the JPLs respectfully request that the Court (i) dismiss the Adversary Proceeding; or (ii) abstain from deciding the Contract Claims; and (iii) grant such other relief as is proper.

*[Remainder of page intentionally left blank.]*

---

[23] Given that the permissive abstention factors subsume the test for mandatory abstention, the JPLs apply the permissive abstention analysis to the Contract Claims.

Dated: May 8, 2023

*/s/ Kevin Gross*
**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Paul N. Heath (No. 3704)
Brendan J. Schlauch (No. 6115)
David T. Queroli (No. 6318)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
gross@rlf.com
heath@rlf.com
schlauch@rlf.com
queroli@rlf.com
-and-

**WHITE & CASE LLP**

Jessica C. Lauria (admitted *pro hac vice*)
J. Christopher Shore (admitted *pro hac vice*)
Brian D. Pfeiffer (admitted *pro hac vice*)
Ashley R. Chase (admitted *pro hac vice*)
Brett L. Bakemeyer (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jessica.lauria@whitecase.com
cshore@whitecase.com
brian.pfeiffer@whitecase.com
ashley.chase@whitecase.com
brett.bakemeyer@whitecase.com

Thomas E Lauria (admitted *pro hac vice*)
Richard S. Kebrdle (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
rkebrdle@whitecase.com

Jason Zakia (admitted *pro hac vice*)
111 S Wacker Dr. Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

*Attorneys for FTX Digital Markets, Ltd. and the Joint Provisional Liquidators of FTX Digital Markets Ltd. (in Provisional Liquidation)*

31