## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| ALAMEDA RESEARCH LLC, ALAMEDA RESEARCH LTD., FTX TRADING LTD., WEST REALM SHIRES, INC., and WEST REALM SHIRES SERVICES, INC., | Adv. Pro. No. 23-50145 (JTD) |
| Plaintiffs, | |
| -against- | |
| FTX DIGITAL MARKETS LTD., BRIAN C. SIMMS, KEVIN G. CAMBRIDGE, and PETER GREAVES, and J. DOES 1–20, | |
| Defendants. | |
| FTX DIGITAL MARKETS LTD., BRIAN C. SIMMS, KEVIN G. CAMBRIDGE, and PETER GREAVES, | |
| Counterclaim Plaintiffs, | |
| -against- | |
| ALAMEDA RESEARCH LLC, ALAMEDA RESEARCH LTD., FTX TRADING LTD., WEST REALM SHIRES INC., WEST REALM SHIRES SERVICES, INC., FTX PROPERTY HOLDINGS LTD., ALAMEDA AUS PTY LTD., ALAMEDA GLOBAL SERVICES LTD., ALAMEDA RESEARCH (BAHAMAS) LTD., ALAMEDA | |

---

[1] The last four digits of FTX Trading Ltd.'s tax identification number are 3288. Due to the large number of debtor entities in these Chapter 11 Cases, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Chapter 11 Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

RESEARCH HOLDINGS INC., ALAMEDA
RESEARCH KK, ALAMEDA RESEARCH PTE
LTD., ALAMEDA RESEARCH YANKARI LTD.,
ALAMEDA TR LTD., ALAMEDA TR SYSTEMS
S. DE R. L., ALLSTON WAY LTD., ANALISYA
PTE LTD., ATLANTIS TECHNOLOGY LTD.,
BANCROFT WAY LTD., BLOCKFOLIO, INC.,
BLUE RIDGE LTD., CARDINAL VENTURES
LTD., CEDAR BAY LTD., CEDAR GROVE
TECHNOLOGY SERVICES, LTD., CLIFTON
BAY INVESTMENTS LLC, CLIFTON BAY
INVESTMENTS LTD., COTTONWOOD GROVE
LTD., COTTONWOOD TECHNOLOGIES LTD.,
CRYPTO BAHAMAS LLC, DAAG TRADING,
DMCC, DECK TECHNOLOGIES HOLDINGS
LLC, DECK TECHNOLOGIES INC., DEEP
CREEK LTD., DIGITAL CUSTODY INC.,
EUCLID WAY LTD., FTX (GIBRALTAR) LTD.,
FTX CANADA INC., FTX CERTIFICATES
GMBH, FTX CRYPTO SERVICES LTD., FTX
DIGITAL ASSETS LLC, FTX DIGITAL
HOLDINGS (SINGAPORE) PTE LTD., FTX
EMEA LTD., FTX EQUITY RECORD HOLDINGS
LTD., FTX EU LTD., FTX EUROPE AG, FTX
EXCHANGE FZE, FTX HONG KONG LTD., FTX
JAPAN HOLDINGS K.K., FTX JAPAN K.K., FTX
JAPAN SERVICES KK, FTX LEND INC., FTX
MARKETPLACE, INC., FTX PRODUCTS
(SINGAPORE) PTE LTD., FTX SERVICES
SOLUTIONS LTD., FTX STRUCTURED
PRODUCTS AG, FTX SWITZERLAND GMBH,
FTX TRADING GMBH, FTX US SERVICES, INC.,
FTX US TRADING, INC., FTX VENTURES LTD.,
FTX ZUMA LTD., GG TRADING TERMINAL
LTD., GLOBAL COMPASS DYNAMICS LTD.,
GOOD LUCK GAMES, LLC, GOODMAN
INVESTMENTS LTD., HANNAM GROUP INC.,
HAWAII DIGITAL ASSETS INC., HILLTOP
TECHNOLOGY SERVICES LLC, HIVE EMPIRE
TRADING PTY LTD., INNOVATIA LTD.,
ISLAND BAY VENTURES INC., KILLARNEY
LAKE INVESTMENTS LTD., LEDGER
HOLDINGS INC., LEDGERPRIME BITCOIN
YIELD ENHANCEMENT FUND, LLC,
LEDGERPRIME BITCOIN YIELD
ENHANCEMENT MASTER FUND LP,

LEDGERPRIME DIGITAL ASSET OPPORTUNITIES FUND, LLC, LEDGERPRIME DIGITAL ASSET OPPORTUNITIES MASTER FUND LP, LEDGER PRIME LLC, LEDGERPRIME VENTURES, LP, LIQUID FINANCIAL USA INC., LIQUIDEX LLC, LIQUID SECURITIES SINGAPORE PTE LTD., LT BASKETS LTD., MACLAURIN INVESTMENTS LTD., MANGROVE CAY LTD., NORTH DIMENSION INC., NORTH DIMENSION LTD., NORTH WIRELESS DIMENSION INC., PAPER BIRD INC., PIONEER STREET INC., QUOINE INDIA PTE LTD., QUOINE PTE LTD., QUOINE VIETNAM CO. LTD., STRATEGY ARK COLLECTIVE LTD., TECHNOLOGY SERVICES BAHAMAS LIMITED, VERDANT CANYON CAPITAL LLC, WEST INNOVATIVE BARISTA LTD., WEST REALM SHIRES FINANCIAL SERVICES INC., WESTERN CONCORD ENTERPRISES LTD., and ZUBR EXCHANGE LTD.,

Counterclaim
Defendants.

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF FTX DIGITAL MARKETS LTD., BRIAN C. SIMMS, KEVIN G. CAMBRIDGE, AND PETER GREAVES TO THE AMENDED COMPLAINT**

FTX Digital Markets Ltd. ("**FTX Digital**"), Brian C. Simms KC, Kevin G. Cambridge, and Peter Greaves, in their capacity as the duly appointed joint provisional liquidators of FTX Digital and foreign representatives of the Provisional Liquidation of FTX Digital (the "**JPLs**" and, together with FTX Digital, the "**FTX Digital Defendants**"), submit this answer (the "**Answer**") to the amended complaint (the "**Amended Complaint**") filed by Alameda Research LLC, Alameda Research Ltd., FTX Trading Ltd., West Realm Shires Inc., and West Realm Shires Services, Inc. (collectively, "**Plaintiffs**" or "**U.S. Debtors**").  To the extent any allegations in the Amended Complaint are not expressly admitted, they are denied; including, but not limited to, any allegations contained in the headings used in the Amended Complaint.  Any averment that the FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of an allegation shall have the effect of a denial.

In compliance with Federal Rule of Bankruptcy Procedure 7012(b), the FTX Digital Defendants state that they do not consent to the entry of final order or judgment by the Court.

<u>**NATURE OF THE CASE**</u>

1.      The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth regarding the U.S. Debtors' motives for bringing the Adversary Proceeding.[2] The remaining allegations in paragraph 1 consist of a summary of the nature of the Adversary Proceeding and argument and legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 1.

2.      Paragraph 2 alleges legal conclusions and contains of a summary of the nature of the Adversary Proceeding and argument to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny making "serial threats" to attempt to relocate these

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Amended Complaint.

Chapter 11 Cases to The Bahamas and lack information or knowledge sufficient to form a belief as to the U.S. Debtors' reasons for bringing the Adversary Proceeding. The FTX Digital Defendants respectfully refer the Court to the June 9, 2023 hearing transcript for a complete and accurate description of any determinations made regarding both the U.S. Debtors' and FTX Digital's assets.

3.      The FTX Digital Defendants deny that the allegations in paragraph 3 accurately and completely reflect what the JPLs "claim" on behalf of FTX Digital.

4.      Paragraph 4 consists of a summary of argument to which no response is required. To the extent a response is required, the FTX Digital Defendants admit that they asserted that FTX Digital owns or has a license to the FTX.com intellectual property, that customers were "migrated" from FTX Trading to FTX Digital, and that FTX Digital has at the least $7.7 billion in receivables from the U.S. Debtors. The FTX Digital Defendants respectfully refer the Court to the JPLs' First Interim Report, dated February 8, 2023, for a complete and accurate description of its contents. The FTX Digital Defendants deny the remaining allegations in paragraph 4.

5.      Paragraph 5 consists of a summary of inflammatory arguments to which no response is required. To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 5.

6.      Paragraph 6 consists of a summary of argument to which no response is required. To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 6.

7.      The FTX Digital Defendants deny the allegations in paragraph 7 except to admit that three individuals have pleaded guilty to fraud in connection with the FTX Group, Mr. Bankman-Fried is under indictment, and the U.S. District Court for the Southern District of New

York has imposed strict pretrial release conditions upon Mr. Bankman-Fried. The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegation that Mr. Bankman-Fried described anything as the "jurisdictional battle vs. Delaware," but admit that the U.S. Debtors' citation to their own prior filing contains the same statement.

8.       Paragraph 8 consists of a summary of argument to which no response is required. To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 8 except to admit that the JPLs sought to file an application in The Bahamas with leave from the U.S. court. The FTX Digital Defendants respectfully refer the Court to the *Motion of the Joint Provisional Liquidators for a Determination that the U.S. Debtors' Automatic Stay Does Not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in the Supreme Court of the Commonwealth of the Bahamas Seeking Resolution of Non-US Law and Other Issues*, Case No. 22-11068-JTD [Dkt. No. 1192] for a complete and accurate description of the FTX Digital Defendants' contentions and to the June 9, 2023 hearing transcript for a complete and accurate description of any determinations made regarding both the U.S. Debtors' and FTX Digital's assets.

## JURISDICTION AND VENUE

9.       The FTX Digital Defendants admit that the Adversary Proceeding relates to the Chapter 11 Cases.

10.       Paragraph 10 consists of legal conclusions to which no response is required.

11.       Paragraph 11 consists of legal conclusions to which no response is required. To the extent a response is required, the FTX Digital Defendants deny that this adversary proceeding is a "core" proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (O) and (P), except for those claims brought under sections 544, 548, and 550 of the Bankruptcy Code.

12.       Paragraph 12 consists of legal conclusions to which no response is required.

13.     Paragraph 13 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants admit that the Court is familiar with certain facts and background of the Chapter 11 Cases and with FTX Digital's chapter 15 proceeding, but deny any implication that this is the only Court familiar with relevant facts and deny the remaining allegations in paragraph 13.

14.     Paragraph 14 consists of legal conclusions to which no response is required.

## PARTIES

15.     The FTX Digital Defendants admit the allegations in paragraph 15.

16.     The FTX Digital Defendants admit the first sentence of paragraph 16.  The second sentence of paragraph 16 consists of legal conclusions to which no response is required.

17.     The FTX Digital Defendants admit the allegations in paragraph 17 except to deny the characterization that FTX Digital operated "for a short period of time."

18.     The FTX Digital Defendants deny the allegations in paragraph 18.

19.     The FTX Digital Defendants admit the allegations in paragraph 19 except to respectfully refer the Court to the Recognition Order for a complete and accurate description of this Court's findings.

20.     The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 20.

## FACTUAL BACKGROUND

21.     FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 21.

22.     FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 22.

23.     The FTX Digital Defendants admit that FTX Digital was incorporated in The Bahamas on July 22, 2021 and that it operated until November 10, 2022.  The FTX Digital Defendants deny the remaining allegations in paragraph 23.

24.     The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 24.  The remainder of paragraph 24 summarizes public indictment records for which the FTX Digital Defendants respectfully refer the Court to for a complete and accurate description of their contents.

25.     The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 25.

26.     The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 26.

27.     The FTX Digital Defendants admit that there existed a plan to transfer property and rights from FTX Trading to FTX Digital, but deny that this plan was "[t]o accomplish the fraudulent scheme."  The remaining allegations in paragraph 27 consist of a summary of argument and legal conclusions to which no response is required.

28.     The FTX Digital Defendants admit that approximately $143 million of fiat currency was transferred into accounts in FTX Digital's name at Moonstone and Silvergate.  The FTX Digital Defendants deny the remaining allegations in paragraph 28.

29.     The FTX Digital Defendants admit that the New Terms of Service contain annexed schedules which made FTX Digital a service provider.  The FTX Digital Defendants deny the remaining allegations in paragraph 29.

30.     The FTX Digital Defendants deny that FTX Digital was regulated by the United States and lack information or knowledge sufficient to form a belief as to the truth of the remaining

8

allegations in paragraph 30.  The FTX Digital Defendants further aver that, to the extent paragraph 30 contains legal conclusions, no response is required.

31.     The FTX Digital Defendants admit that the U.S. Debtors entered into bankruptcy, but deny that FTX Digital entered liquidation, rather than provisional liquidation.  The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations of paragraph 31.

32.     The FTX Digital Defendants admit the allegations in paragraph 32.

33.     The FTX Digital Defendants admit that they have made claims to ownership of property, but deny that the JPLs' claims are to property outside of FTX Digital's estate.  The FTX Digital Defendants deny that the JPLs have sought to relocate these proceedings to The Bahamas.  The FTX Digital Defendants admit that the JPLs filed the Chapter 15 Petition and supporting Declaration of Brian Simms and respectfully refer the Court to those pleadings referenced in paragraph 33 for a complete and accurate description of their contents.

34.     The FTX Digital Defendants deny the characterizations made in paragraph 34.  The FTX Digital Defendants admit that they filed the pleadings referenced in paragraph 34 and respectfully refer the Court to those pleadings for a complete and accurate description of their contents.

35.     The FTX Digital Defendants deny the characterizations made in paragraph 35 and respectfully refer the Court to the transcript of the chapter 15 recognition hearing for a complete and accurate description of its contents.

36.     The FTX Digital Defendants admit that they made the assertions detailed in paragraph 36 in their First Interim Report, dated February 8, 2023, and respectfully refer the Court

to their First Interim Report for a complete and accurate description of its contents, and otherwise deny the allegations of paragraph 36.

37.     The FTX Digital Defendants deny the allegations in paragraph 37.

38.     Paragraph 38 consists of a summary of argument to which no response is required. To the extent a response is required, the FTX Digital Defendants admit that the New Terms of Service were part of the migration plan and deny the remaining allegations in paragraph 38.

39.     The FTX Digital Defendants admit the first sentence in paragraph 39.  The FTX Digital Defendants deny the second sentence in paragraph 39.

40.     The FTX Digital Defendants deny the allegations in the first, second, fifth, and sixth bullet points in paragraph 40.  The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in the third, fourth, seventh, and eighth bullet points in paragraph 40.

41.     The FTX Digital Defendants deny the allegations in paragraph 41.

42.     The FTX Digital Defendants deny the allegations in paragraph 42.

43.     The FTX Digital Defendants deny the allegations in paragraph 43 and respectfully refer the Court to the New Terms of Service for a complete and accurate description of its contents.

44.     The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations of what the U.S. Debtors' "review" demonstrates with respect to the bullet points in paragraph 44.

45.     The FTX Digital Defendants deny the allegations in the first clause of the first sentence of paragraph 45.  The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in the bullet points in paragraph 45.

46.    The FTX Digital Defendants deny the allegations in paragraph 46 and respectfully refer the Court to the referenced terms of service for a complete and accurate description of its contents.

47.    The FTX Digital Defendants deny the allegations in the first sentence of paragraph 47.  The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in the examples in paragraph 47.

48.    The FTX Digital Defendants deny the allegations in paragraph 48.

49.    The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 49.  The FTX Digital Defendants aver that the Invention Assignment Agreement and offers of employment speak for themselves.

50.    The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 50.  The FTX Digital Defendants aver that the Invention Assignment Agreement speaks for itself.

51.    The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 51.

52.    The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 52.

53.    Paragraph 53 consists of legal conclusions to which no response is required.  To the extent the allegations in paragraph 53 concern an agreement with Cottonwood Grove Ltd., the FTX Digital Defendants aver that such agreement speaks for itself.  The FTX Digital Defendants otherwise lack information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 53.

54.    The FTX Digital Defendants deny the allegations in paragraph 54.

RLF1 29291250v.2

55.    The FTX Digital Defendants deny the allegations in paragraph 55.

56.    The FTX Digital Defendants aver that the indictment cited in paragraph 56 speaks for itself and respectfully refer the Court to the indictment for a complete and accurate description of its contents.

57.    The FTX Digital Defendants aver that the third-party statements in the indictment cited in paragraph 57 speak for themselves and respectfully refer the Court to the indictment for a complete and accurate description of its contents.

58.    The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 58.

59.    The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 59.

60.    The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 60.

61.    The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 61.

62.    The FTX Digital Defendants deny the allegations in paragraph 62 and respectfully refer the Court to the terms of service, corporate charter and "any law" for a complete and accurate description of "Mr. Bankman-Fried and his agents' . . . power."

63.    Paragraph 63 consists of summary of argument and legal conclusion to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 63.

64.    Paragraph 64 consists of summary of argument and legal conclusion to which no response is required.  To the extent a response is required, the FTX Digital Defendants lack

information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 64.

65.      The FTX Digital Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in paragraph 65.

## CAUSES OF ACTION

## COUNT I

66.      Paragraph 66 contains no factual allegations to which a response is required.  To the extent a response is required, the FTX Digital Defendants repeat each answer contained in paragraphs 1 through 65.

67.      Paragraph 67 consists of legal conclusions to which no response is required.

68.      The FTX Digital Defendants deny the allegations in paragraph 68.

69.      Paragraph 69 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 69.

70.      The FTX Digital Defendants deny the allegations in paragraph 70.

71.      Paragraph 71 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 71.

72.      Paragraph 72 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 72.

73.      The FTX Digital Defendants deny the allegations in paragraph 73.

74.     Paragraph 74 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 74.

## COUNT II

75.     Paragraph 75 contains no factual allegations to which a response is required.  To the extent a response is required, the FTX Digital Defendants repeat each answer contained in paragraphs 1 through 65.

76.     Paragraph 76 consists of legal conclusions to which no response is required.

77.     The FTX Digital Defendants deny the allegations in paragraph 77.

78.     Paragraph 78 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 78.

79.     The FTX Digital Defendants deny the allegations in paragraph 79.

80.     Paragraph 80 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 80.

81.     Paragraph 81 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 81.

82.     The FTX Digital Defendants deny the allegations in paragraph 82.

83.     Paragraph 83 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 83.

**COUNT III**

84.     Paragraph 84 contains no factual allegations to which a response is required.  To the extent a response is required, the FTX Digital Defendants repeat each answer contained in paragraphs 1 through 65.

85.     Paragraph 85 consists of legal conclusions to which no response is required.

86.     The FTX Digital Defendants deny the allegations in paragraph 86.

87.     Paragraph 87 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 87.

88.     The FTX Digital Defendants deny the allegations in paragraph 88.

89.     Paragraph 89 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 89.

90.     The FTX Digital Defendants deny the allegations in paragraph 90.

91.     Paragraph 91 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 91.

**COUNT IV**

92.     Paragraph 92 contains no factual allegations to which a response is required.  To the extent a response is required, the FTX Digital Defendants repeat each answer contained in paragraphs 1 through 65.

93.     Paragraph 93 consists of legal conclusions to which no response is required.

94.     The FTX Digital Defendants deny the allegations in paragraph 94.

RLF1 29291250v.2

95.     Paragraph 95 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 95.

96.     The FTX Digital Defendants deny the allegations in paragraph 96.

97.     Paragraph 97 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 97.

98.     The FTX Digital Defendants deny the allegations in paragraph 98.

99.     Paragraph 99 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 99.

## COUNT V

100.    Paragraph 100 contains no factual allegations to which a response is required.  To the extent a response is required, the FTX Digital Defendants repeat each answer contained in paragraphs 1 through 65.

101.    Paragraph 101 consists of legal conclusions to which no response is required.

102.    The FTX Digital Defendants deny the allegations in paragraph 102.

103.    Paragraph 103 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 103.

104.    The FTX Digital Defendants deny the allegations in paragraph 104.

RLF1 29291250v.2

105.     Paragraph 105 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 105.

106.     The FTX Digital Defendants deny the allegations in paragraph 106.

107.     The FTX Digital Defendants deny the allegations in paragraph 107.

108.     Paragraph 108 consists of legal conclusions to which no response is required.  To the extent a response is required, the FTX Digital Defendants deny the allegations in paragraph 108.

## COUNT VI

109.     The FTX Digital Defendants have filed a motion for this Court to abstain on Count VI; therefore, no response to paragraph 109 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 109, if necessary, following disposition of their motion.

110.     The FTX Digital Defendants have filed a motion for this Court to abstain on Count VI; therefore, no response to paragraph 110 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 110, if necessary, following disposition of their motion.

111.     The FTX Digital Defendants have filed a motion for this Court to abstain on Count VI; therefore, no response to paragraph 111 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 111, if necessary, following disposition of their motion.

112.     The FTX Digital Defendants have filed a motion for this Court to abstain on Count VI; therefore, no response to paragraph 112 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 112, if necessary, following disposition of their motion.

RLF1 29291250v.2

113.    The FTX Digital Defendants have filed a motion for this Court to abstain on Count VI; therefore, no response to paragraph 113 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 113, if necessary, following disposition of their motion.

114.    The FTX Digital Defendants have filed a motion for this Court to abstain on Count VI; therefore, no response to paragraph 114 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 114 if necessary, following disposition of their motion.

115.    The FTX Digital Defendants have filed a motion for this Court to abstain on Count VI; therefore, no response to paragraph 115 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 115, if necessary, following disposition of their motion.

116.    The FTX Digital Defendants have filed a motion for this Court to abstain on Count VI; therefore, no response to paragraph 116 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 116, if necessary, following disposition of their motion.

## COUNT VII

117.    The FTX Digital Defendants have filed a motion to dismiss Count VII; therefore, no response to paragraph 117 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 117, if necessary, following disposition of their motion.

118.    The FTX Digital Defendants have filed a motion to dismiss Count VII; therefore, no response to paragraph 118 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 118, if necessary, following disposition of their motion.

119.    The FTX Digital Defendants have filed a motion to dismiss Count VII; therefore, no response to paragraph 119 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 119, if necessary, following disposition of their motion.

RLF1 29291250v.2

120.    The FTX Digital Defendants have filed a motion to dismiss Count VII; therefore, no response to paragraph 120 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 120, if necessary, following disposition of their motion.

121.    The FTX Digital Defendants have filed a motion to dismiss Count VII; therefore, no response to paragraph 121 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 121, if necessary, following disposition of their motion.

122.    The FTX Digital Defendants have filed a motion to dismiss Count VII; therefore, no response to paragraph 122 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 122, if necessary, following disposition of their motion.

123.    The FTX Digital Defendants have filed a motion to dismiss Count VII; therefore, no response to paragraph 123 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 123, if necessary, following disposition of their motion.

124.    The FTX Digital Defendants have filed a motion to dismiss Count VII; therefore, no response to paragraph 124 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 124, if necessary, following disposition of their motion.

## COUNT VIII

125.    The FTX Digital Defendants have filed a motion to dismiss Count VIII; therefore, no response to paragraph 125 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 125, if necessary, following disposition of their motion.

126.    The FTX Digital Defendants have filed a motion to dismiss Count VIII; therefore, no response to paragraph 126 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 126, if necessary, following disposition of their motion.

127.    The FTX Digital Defendants have filed a motion to dismiss Count VIII; therefore, no response to paragraph 127 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 127, if necessary, following disposition of their motion.

128.    The FTX Digital Defendants have filed a motion to dismiss Count VIII; therefore, no response to paragraph 128 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 128, if necessary, following disposition of their motion.

129.    The FTX Digital Defendants have filed a motion to dismiss Count VIII; therefore, no response to paragraph 129 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 129, if necessary, following disposition of their motion.

130.    The FTX Digital Defendants have filed a motion to dismiss Count VIII; therefore, no response to paragraph 130 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 130, if necessary, following disposition of their motion.

## **COUNT IX**

131.    The FTX Digital Defendants have filed a motion to dismiss Count IX; therefore, no response to paragraph 131 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 131, if necessary, following disposition of their motion.

132.    The FTX Digital Defendants have filed a motion to dismiss Count IX; therefore, no response to paragraph 132 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 132, if necessary, following disposition of their motion.

133.    The FTX Digital Defendants have filed a motion to dismiss Count IX; therefore, no response to paragraph 133 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 133, if necessary, following disposition of their motion.

RLF1 29291250v.2

134.     The FTX Digital Defendants have filed a motion to dismiss Count IX; therefore, no response to paragraph 134 is required at this time.  The FTX Digital Defendants reserve all rights to respond to paragraph 134, if necessary, following disposition of their motion.

## **AFFIRMATIVE DEFENSES**

Without assuming the burden of proof where such burden is otherwise on Plaintiffs as a matter of applicable substantive or procedural law, the FTX Digital Defendants assert the following defenses.

1.     Counts I-V are void as a violation of applicable automatic stays.

2.     Counts I-V are barred, in whole or in part, for failure to obtain leave to sue the JPLs.

3.     Counts I-V fail to join indispensable parties.

4.     Counts I-V fail to state a claim upon which relief can be granted.

5.     Counts I-V are barred, in whole or in part, because some or all of the Plaintiffs lack standing to bring these claims.

6.     Counts I-V are barred, in whole or in part, by the Plaintiffs' bad faith.

7.     Counts I-V are barred, in whole or in part, by the doctrines of unjust enrichment, waiver, and estoppel.

8.     Counts I-V are barred, in whole or in part, by the doctrine of duress.

9.     Counts I-V are limited by the Plaintiffs' breach of the Cooperation Agreement (defined below).

10.     Counts I-V are barred, in whole or in part, by the doctrine of unclean hands and *in pari delicto*.

11.     Counts I-V are barred by the U.S. Constitution because they call for an advisory opinion from the Court.

12.     Counts I-V are barred, in whole or in part, by the doctrine of ratification.

13.     Counts I-V are tainted by a conflict of interest.

14.     The costs, damages, and penalties the Plaintiffs seek to recover or impose are unreasonable, excessive, arbitrary, and capricious.

15.     The Plaintiffs are not entitled to recover attorneys' fees or costs, or fees of litigation.

16.     The FTX Digital Defendants reserve the right to plead additional defenses as may be appropriate depending upon facts later revealed during discovery.

The FTX Digital Defendants reserve all rights to assert affirmative defenses to Counts VI-IX, if necessary, including defenses arising under section 546 of the Bankruptcy Code, following disposition of the motion to abstain and the motion to dismiss.

## THE FTX DIGITAL DEFENDANTS' COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, made applicable herein by Rule 7013 of the Federal Rules of Bankruptcy Procedure, the FTX Digital Defendants assert the following counterclaims (the "**Counterclaims**") against Alameda Research LLC, Alameda Research Ltd., FTX Trading Ltd., West Realm Shires Inc., West Realm Shires Services, Inc., FTX Property Holdings Ltd., Alameda Aus Pty Ltd., Alameda Global Services Ltd., Alameda Research (Bahamas) Ltd., Alameda Research Holdings Inc., Alameda Research KK, Alameda Research Pte Ltd., Alameda Research Yankari Ltd., Alameda TR Ltd., Alameda TR Systems S. de R. L., Allston Way Ltd., Analisya Pte Ltd., Atlantis Technology Ltd., Bancroft Way Ltd., Blockfolio, Inc., Blue Ridge Ltd., Cardinal Ventures Ltd., Cedar Bay Ltd., Cedar Grove Technology Services, Ltd., Clifton Bay Investments LLC, Clifton Bay Investments Ltd., Cottonwood Grove Ltd., Cottonwood Technologies Ltd., Crypto Bahamas LLC, DAAG Trading, DMCC, Deck Technologies Holdings LLC, Deck Technologies Inc., Deep Creek Ltd., Digital Custody Inc., Euclid Way Ltd., FTX

(Gibraltar) Ltd., FTX Canada Inc., FTX Certificates GmbH, FTX Crypto Services Ltd., FTX Digital Assets LLC, FTX Digital Holdings (Singapore) Pte Ltd., FTX EMEA Ltd., FTX Equity Record Holdings Ltd., FTX EU Ltd., FTX Europe AG, FTX Exchange FZE, FTX Hong Kong Ltd., FTX Japan Holdings K.K., FTX Japan K.K., FTX Japan Services KK, FTX Lend Inc., FTX Marketplace, Inc., FTX Products (Singapore) Pte Ltd., FTX Services Solutions Ltd., FTX Structured Products AG, FTX Switzerland GmbH, FTX Trading GmbH, FTX US Services, Inc., FTX US Trading, Inc., FTX Ventures Ltd., FTX Zuma Ltd., GG Trading Terminal Ltd., Global Compass Dynamics Ltd., Good Luck Games, LLC, Goodman Investments Ltd., Hannam Group Inc., Hawaii Digital Assets Inc., Hilltop Technology Services LLC, Hive Empire Trading Pty Ltd., Innovatia Ltd., Island Bay Ventures Inc., Killarney Lake Investments Ltd., Ledger Holdings Inc., LedgerPrime Bitcoin Yield Enhancement Fund, LLC, LedgerPrime Bitcoin Yield Enhancement Master Fund LP, LedgerPrime Digital Asset Opportunities Fund, LLC, LedgerPrime Digital Asset Opportunities Master Fund LP, Ledger Prime LLC, LedgerPrime Ventures, LP, Liquid Financial USA Inc., LiquidEX LLC, Liquid Securities Singapore Pte Ltd., LT Baskets Ltd., Maclaurin Investments Ltd., Mangrove Cay Ltd., North Dimension Inc., North Dimension Ltd., North Wireless Dimension Inc., Paper Bird Inc., Pioneer Street Inc., Quoine India Pte Ltd., Quoine Pte Ltd., Quoine Vietnam Co. Ltd., Strategy Ark Collective Ltd., Technology Services Bahamas Limited, Verdant Canyon Capital LLC, West Innovative Barista Ltd., West Realm Shires Financial Services Inc., Western Concord Enterprises Ltd., and Zubr Exchange Ltd. (collectively, the "**Counterclaim Defendants**") and allege the following based upon personal knowledge derived from their investigation to date, and upon information and belief as to all other matters.

## NATURE OF COUNTERCLAIMS

1.      Since their appointment, the JPLs—court-appointed fiduciaries with more than fifty thousand constituents already asserting claims on FTX Digital's portal—have been stonewalled by the Counterclaim Defendants in their attempts to fulfill their duty of identifying, safeguarding, and maintaining the assets of FTX Digital during its Provisional Liquidation.[3]   Indeed, the Counterclaim Defendants have been the biggest impediment to the JPLs achieving the maximum possible value for FTX Digital's creditors and customers.

2.      In an effort to tear down that wall, the JPLs sought in good faith to work with the Counterclaim Defendants towards what should have been a shared goal of efficient administration of their respective bankruptcy estates.   To that end, the JPLs negotiated the terms of the Cooperation Agreement (defined below) with the Counterclaim Defendants.   The point of this agreement was to divide areas of responsibility between the two estates; allow for the efficient administration of both estates; avoid unnecessary duplication; and respect the legal regimes in both the United States and The Bahamas.   The Cooperation Agreement did not resolve all open issues between the JPLs and the Counterclaim Defendants.   But, it did require the parties to coordinate in good faith on an efficient and cooperative process to resolve open issues in the appropriate forum.   Both this Court and the Bahamas Court approved the Cooperation Agreement.

3.      Upon executing the Cooperation Agreement, the JPLs materially performed on their end of the bargain.   For instance, the JPLs ceased prosecuting numerous issues set for resolution in the early months of 2023, including those related to all first and second day relief in these cases and potential motions to dismiss certain U.S. Debtors' cases in favor of a more proper

---

[3] On November 10, 2022 (the day before these Chapter 11 Cases were filed), FTX Digital became a debtor in a provisional liquidation under the control and supervision of the Bahamas Court (the "**Provisional Liquidation**").

forum.  When it came time for the Counterclaim Defendants to reciprocate and honor their bargained-for obligations under the Cooperation Agreement, they balked.  Upon information and belief, the Counterclaim Defendants have used the Cooperation Agreement in bad faith as an instrument to seek to silence the JPLs and frustrate the operation of the Provisional Liquidation.

4.      Indeed, in the six months since the Counterclaim Defendants executed the Cooperation Agreement, they have managed to breach each and every obligation, specifically:

- Instead of honoring their agreement to allow the JPLs to collect all assets in FTX Digital's name, they have actively obstructed the JPLs' efforts to recover FTX Digital's funds that were seized by the U.S. Government, upon information and belief with the active assistance of the Counterclaim Defendants' professionals;

- Instead of honoring their agreement to allow the JPLs to control $45 million held by Tether, they have actively obstructed the JPLs' efforts to recover that Tether;

- Despite promising to work with the JPLs to cooperatively restart the International Platform, the Counterclaim Defendants have been actively working to *exclude* the JPLs from that process;

- Instead of honoring their agreement to allow the JPLs to manage and monetize FTX's real property in The Bahamas, they have actively interfered with the JPLs' efforts to do so;

- Despite their obligation to "share information in their possession concerning the matters contemplated" by the Cooperation Agreement, they have refused to turn over all of FTX Digital's information; and

- Instead of honoring their agreement to work with the JPLs in good faith to determine ownership of assets that are subject to competing claims, the Plaintiffs filed the Adversary Proceeding without any meaningful notice or engagement to resolve the issues consensually, and in violation of the automatic stay.

5.      The Counterclaim Defendants have demonstrated a fundamental lack of respect for this Court's extension of comity to FTX Digital's Provisional Liquidation and the Bahamas Court presiding over that Provisional Liquidation.  The Counterclaim Defendants' actions have caused injury to FTX Digital and its creditors and customers, whose interests the JPLs are charged to protect.  The FTX Digital Defendants are therefore entitled to post-petition damages for the Counterclaim Defendants' breaches.

6.      Further, the FTX Digital Defendants respectfully request a declaratory judgment regarding terms under which FTX Digital held digital assets and fiat in the United States for the benefit of its customers.

7.      FTX Digital's claims against the Counterclaim Defendants are entitled to administrative priority status under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code.

## JURISDICTION AND VENUE

8.      The Counterclaims are brought under Rule 7013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and sections 362, 1520, 105(a), 503(b)(1)(A) and 507(a)(2) of the United States Bankruptcy Code (the "**Bankruptcy Code**").

9.      This Court's determination of the Counterclaims constitutes a "core" proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (C), and (P).

10.     This Court has jurisdiction over the Counterclaims under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.

11.     Venue is proper for the Counterclaims under 28 U.S.C. §§ 1408 and 1409.

12.     Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the FTX Digital Defendants consent to the entry of a final order or judgment by this Court on the Counterclaim Counts I-VIII to the extent it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  The FTX Digital Defendants do not consent to the entry of a final order or judgment by this Court on Count IX of the Counterclaims.

26

## PARTIES

13.    The counterclaim plaintiffs in this proceeding are FTX Digital Markets Ltd. ("**FTX Digital**"), Brian C. Simms KC, Kevin G. Cambridge, and Peter Greaves, in their capacity as the duly appointed joint provisional liquidators of FTX Digital and foreign representatives of the Provisional Liquidation of FTX Digital (the "**JPLs**" and, together with FTX Digital, the "**FTX Digital Defendants**").

14.    The Counterclaim Defendants in this proceeding are all parties to the Cooperation Agreement (as defined herein).  They are: Alameda Research LLC, Alameda Research Ltd., FTX Trading Ltd. ("**FTX Trading**"), West Realm Shires Inc., West Realm Shires Services, Inc., FTX Property Holdings Ltd., Alameda Aus Pty Ltd., Alameda Global Services Ltd., Alameda Research (Bahamas) Ltd., Alameda Research Holdings Inc., Alameda Research KK, Alameda Research Pte Ltd., Alameda Research Yankari Ltd., Alameda TR Ltd., Alameda TR Systems S. de R. L., Allston Way Ltd., Analisya Pte Ltd., Atlantis Technology Ltd., Bancroft Way Ltd., Blockfolio, Inc., Blue Ridge Ltd., Cardinal Ventures Ltd., Cedar Bay Ltd., Cedar Grove Technology Services, Ltd., Clifton Bay Investments LLC, Clifton Bay Investments Ltd., Cottonwood Grove Ltd., Cottonwood Technologies Ltd., Crypto Bahamas LLC, DAAG Trading, DMCC, Deck Technologies Holdings LLC, Deck Technologies Inc., Deep Creek Ltd., Digital Custody Inc., Euclid Way Ltd., FTX (Gibraltar) Ltd., FTX Canada Inc., FTX Certificates GmbH, FTX Crypto Services Ltd., FTX Digital Assets LLC, FTX Digital Holdings (Singapore) Pte Ltd., FTX EMEA Ltd., FTX Equity Record Holdings Ltd., FTX EU Ltd., FTX Europe AG, FTX Exchange FZE, FTX Hong Kong Ltd., FTX Japan Holdings K.K., FTX Japan K.K., FTX Japan Services KK, FTX Lend Inc., FTX Marketplace, Inc., FTX Products (Singapore) Pte Ltd., FTX Services Solutions Ltd., FTX Structured Products AG, FTX Switzerland GmbH, FTX Trading GmbH, FTX US Services, Inc., FTX US Trading, Inc., FTX Ventures Ltd., FTX Zuma Ltd., GG Trading Terminal Ltd., Global

27

Compass Dynamics Ltd., Good Luck Games, LLC, Goodman Investments Ltd., Hannam Group Inc., Hawaii Digital Assets Inc., Hilltop Technology Services LLC, Hive Empire Trading Pty Ltd., Innovatia Ltd., Island Bay Ventures Inc., Killarney Lake Investments Ltd., Ledger Holdings Inc., LedgerPrime Bitcoin Yield Enhancement Fund, LLC, LedgerPrime Bitcoin Yield Enhancement Master Fund LP, LedgerPrime Digital Asset Opportunities Fund, LLC, LedgerPrime Digital Asset Opportunities Master Fund LP, Ledger Prime LLC, LedgerPrime Ventures, LP, Liquid Financial USA Inc., LiquidEX LLC, Liquid Securities Singapore Pte Ltd., LT Baskets Ltd., Maclaurin Investments Ltd., Mangrove Cay Ltd., North Dimension Inc., North Dimension Ltd., North Wireless Dimension Inc., Paper Bird Inc., Pioneer Street Inc., Quoine India Pte Ltd., Quoine Pte Ltd., Quoine Vietnam Co. Ltd., Strategy Ark Collective Ltd., Technology Services Bahamas Limited, Verdant Canyon Capital LLC, West Innovative Barista Ltd., West Realm Shires Financial Services Inc., Western Concord Enterprises Ltd., and Zubr Exchange Ltd.

15.    Counterclaim Defendants Alameda Research LLC, Alameda Research Holdings Inc., Blockfolio, Inc., Clifton Bay Investments LLC, Crypto Bahamas LLC, Deck Technologies Holdings LLC, Deck Technologies Inc., Digital Custody Inc., FTX Digital Assets LLC, FTX Lend Inc., FTX Marketplace, Inc., FTX US Services, Inc., FTX US Trading, Inc., Good Luck Games, LLC, Hawaii Digital Assets Inc., Hilltop Technology Services LLC, Island Bay Ventures Inc., Ledger Holdings Inc., Ledger Prime LLC, North Dimension Inc., North Wireless Dimension Inc., Paper Bird Inc., Pioneer Street Inc., Verdant Canyon Capital LLC, West Realm Shires Financial Services Inc., West Realm Shires, Inc., and West Realm Shires Services, Inc. are incorporated under Delaware law.

16.    Counterclaim Defendants Alameda Research Ltd., Alameda Global Services Ltd., Clifton Bay Investments Ltd., FTX Services Solutions Ltd., FTX Ventures Ltd., Goodman

Investments Ltd., Killarney Lake Investments Ltd., and North Dimension Ltd. are incorporated under the laws of the British Virgin Islands.

17.     Counterclaim Defendants FTX Trading, Alameda TR Ltd., Allston Way Ltd., Atlantis Technology Ltd., Bancroft Way Ltd., Blue Ridge Ltd., Cardinal Ventures Ltd., Cedar Bay Ltd., Cedar Grove Technology Services, Ltd., Cottonwood Technologies Ltd., Deep Creek Ltd., Euclid Way Ltd., Global Compass Dynamics Ltd., LT Baskets Ltd., Mangrove Cay Ltd., Strategy Ark Collective Ltd., West Innovative Barista Ltd., and Western Concord Enterprises Ltd. are incorporated under the laws of Antigua and Barbuda.

18.     Counterclaim Defendants FTX Property Holdings Ltd., Alameda Research (Bahamas) Ltd., and Technology Services Bahamas Limited are incorporated under the laws of The Bahamas.

19.     Counterclaim Defendants Alameda Aus Pty Ltd. and Hive Empire Trading Pty Ltd. are incorporated under the laws of Australia.

20.     Counterclaim Defendants Alameda Research KK, FTX Japan Holdings K.K., FTX Japan K.K., FTX Japan Services KK, Liquid Financial USA Inc., and LiquidEX LLC are incorporated under the laws of Japan.

21.     Counterclaim Defendants Alameda Research Pte Ltd., Analisya Pte Ltd., FTX Digital Holdings (Singapore) Pte Ltd., FTX Products (Singapore) Pte Ltd., Liquid Securities Singapore Pte Ltd., and Quoine Pte Ltd. are incorporated under the laws of Singapore.

22.     Counterclaim Defendants Alameda Research Yankari Ltd. and FTX Zuma Ltd. are incorporated under the laws of Nigeria.

23.     Counterclaim Defendant Alameda TR Systems S. de R. L. is incorporated under the laws of Panama.

24.     Counterclaim Defendants Cottonwood Grove Ltd. and FTX Hong Kong Ltd. are incorporated under the laws of Hong Kong.

25.     Counterclaim Defendants DAAG Trading, DMCC and FTX Exchange FZE are incorporated under the laws of the United Arab Emirates.

26.     Counterclaim Defendants FTX (Gibraltar) and Zubr Exchange Ltd. are incorporated under the laws of Gibraltar.

27.     Counterclaim Defendant FTX Canada Inc. is incorporated under the laws of Canada.

28.     Counterclaim Defendants FTX Certificates GmbH, FTX Europe AG, and FTX Switzerland GmbH are incorporated under the laws of Switzerland.

29.     Counterclaim Defendants FTX Crypto Services Ltd., FTX EMEA Ltd., FTX EU Ltd., and Innovatia Ltd. are incorporated under the laws of Cyprus.

30.     Counterclaim Defendants FTX Equity Record Holdings Ltd. and Maclaurin Investments Ltd. are incorporated under the laws of the Seychelles.

31.     Counterclaim Defendant FTX Structured Products AG is incorporated under the laws of Liechtenstein.

32.     Counterclaim Defendant FTX Trading GmbH is incorporated under the laws of Germany.

33.     Counterclaim Defendant GG Trading Terminal Ltd. is incorporated under the laws of Ireland.

34.     Counterclaim Defendant Hannam Group Inc. is incorporated under the laws of South Korea.

RLF1 29291250v.2

35.     Counterclaim Defendants LedgerPrime Bitcoin Yield Enhancement Fund, LLC, LedgerPrime Bitcoin Yield Enhancement Master Fund LP, LedgerPrime Digital Asset Opportunities Fund, LLC, LedgerPrime Digital Asset Opportunities Master Fund LP, and LedgerPrime Ventures, LP are incorporated under the laws of the Cayman Islands.

36.     Counterclaim Defendant Quoine India Pte Ltd. is incorporated under the laws of India.

## **BACKGROUND**

### A.  **History of the FTX International Platform and Relocation to The Bahamas**

37.     FTX Trading was incorporated in April 2019, and is a company organized under the International Business Company Act, CAP. 222 of Antigua.  Initially, FTX Trading was responsible for running the FTX Group's international digital asset exchange platform (the "**International Platform**") — the platform through which the FTX Group did business with somewhere between 2.4 million to upwards of 7.6 million customers, all understood to be located outside the United States (the "**International Customers**").  The International Platform was initially headquartered in Hong Kong, China.

38.     On December 14, 2020, the Commonwealth of The Bahamas enacted a licensing and regulatory regime for the digital asset industry pursuant to the Digital Assets and Registration Exchange Act of 2020 (the "**DARE Act**").  To take advantage of The Bahamas' new regulatory regime, the FTX Group took a series of steps to relocate its business to The Bahamas.  The move was highly publicized and the FTX Group made multiple public announcements and statements about the relocation of its headquarters from Hong Kong to The Bahamas.

39.     A new entity, FTX Digital, was incorporated in The Bahamas by July 22, 2021 so that the FTX Group could obtain a license to legally run the International Platform in The Bahamas.  To that end, FTX Digital was registered as a digital asset business ("**DAB**") under

Section 8 of the DARE Act.  As a DAB, FTX Digital became the only FTX Group entity regulated to run the International Platform with respect to regulated products, which constituted 90% of the products on the International Platform.  Pursuant to the DARE Act, a DAB includes, among other things, the business of "operating as a digital asset service provider[.]"  DARE Act § 6(d).  Under the DARE Act, a digital asset service provider is "a person that – (a) under an agreement as part of its business – (i) can undertake a digital asset transaction on behalf of another person; or (ii) has power of attorney over another person's digital asset; or (b) operates as a market maker for digital assets."  DARE Act § 1.

40.    Between July 2021 and May 2022, the FTX Group transitioned its headquarters and business to The Bahamas, namely to FTX Digital, by, among other things, (a) transferring the employment contracts of at least 38 individuals, including the co-founders, senior management, and key employees to FTX Digital; (b) creating and executing a "migration plan" to migrate customers to FTX Digital's business from FTX Trading; (c) opening bank accounts in FTX Digital's name which received and sent fiat currency from and to International Customers; (d) funding the purchase of upwards of $250,000,000 worth of real property to establish an FTX campus with offices and housing for hundreds of employees; and perhaps most importantly, (e) uploading new terms of service that effectuated the novation of FTX Trading to FTX Digital as the counterparty to the International Customers.

**B.  FTX Digital Holds Assets for Customers Pursuant to the Terms of Service**

41.    After the migration of customers and novation of the Terms of Service, FTX Digital may hold digital assets and fiat in the United States in trust for the benefit of its migrated or new customers, as indicated by the following:

- An internal policy document entitled "FTX Digital Markets Limited, Safeguarding of Assets & Digital Token Management Policy," dated August 16, 2021, which states: "All third-party providers are aware that customer assets are held in trust."

- Clause 8.2.6 of the New Terms of Service, which states: "(A) *Title to your Digital Assets shall at all times remain with you and shall not transfer to FTX Trading. As the owner of Digital Assets* in your Account, you shall bear all risk of loss of such Digital Assets. FTX Trading shall have no liability for fluctuations in the fiat currency value of Digital Assets held in your Account;" "(B) *None* of the Digital Assets in your Account are *the property of*, or shall or may be loaned to, *FTX Trading*; FTX Trading does *not* represent or treat Digital Assets in User's Accounts *as belonging to FTX Trading*;" "(C) You control the Digital Assets held in your Account. . . ." (emphases added).

- Clause 1.3 of the New Terms of Service provides that "'FTX Trading' (or 'we', 'our' or 'us') [is to be] read as reference to the Service Provider specified in the Specified Service Schedule." Therefore, Clause 8.2.6's references to FTX Trading are actually references to FTX Digital.

42.    The Old Terms of Service did not contain clauses to the same effect, meaning fiat and digital assets may not have been held in the same manner.

43.    In order to establish a custodial trust under English law, three elements are required: (i) the trustee's intention to hold assets in trust; (ii) sufficient identification of the trust beneficiary; and (iii) sufficient identification of the trust assets.  At this time (and primarily due to the U.S. Debtors blocking the JPLs' access to FTX Digital's data), the JPLs lack sufficient information to, in their present view, conclusively determine whether all three elements have been met, particularly as evidence of intent may be shown by extrinsic evidence.

## C.  The FTX Group Collapse and Bankruptcy Proceedings

44.    On November 10, 2022, the Securities Commission of The Bahamas (the "**SCB**") suspended the registration of FTX Digital under section 19 of the DARE Act and petitioned the Supreme Court of the Commonwealth of the Bahamas (the "**Bahamas Court**") for the winding up and Provisional Liquidation of FTX Digital.

45.    The Bahamas Court granted the SCB's petition the same day and appointed Brian Simms KC as FTX Digital's provisional liquidator.

46.     On November 11, 2022 and November 14, 2022, the Counterclaim Defendants commenced these Chapter 11 Cases.

47.     On November 14, 2022, the Bahamas Court appointed Kevin G. Cambridge and Peter Greaves as additional joint provisional liquidators.

48.     The Provisional Liquidation Order provided for the JPLs to displace FTX Digital's officers and directors.  The JPLs are court-appointed officers tasked with identifying, safeguarding, and maintaining the assets of FTX Digital during the period of FTX Digital's Provisional Liquidation.

49.     On November 15, 2022, the JPLs filed a petition on behalf of FTX Digital for recognition of its Provisional Liquidation as a foreign main proceeding in the United States Bankruptcy Court for the Southern District of New York commencing the chapter 15 case, which was thereafter transferred to this Court.  *In re FTX Digital Markets Ltd.*, Case No. 22-11516 (Bankr. S.D.N.Y. 2022) [Dkt. No. 1].

50.     The Counterclaim Defendants initially expressed their objection to recognition of FTX Digital's Provisional Liquidation, but their objection was resolved through the Cooperation Agreement.

51.     On February 15, 2023, this Court entered an order recognizing FTX Digital's Provisional Liquidation as a foreign main proceeding and the JPLs as the foreign representatives of the FTX Digital estate in the U.S. (the "**Recognition Order**").  *See Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief*, Case No. 22-10217-JTD [Dkt. No. 129].

52.     In the Recognition Order, this Court granted, among other things, "all relief and protection" afforded to foreign main proceedings under section 1520 of the Bankruptcy Code, including but not limited to section 362 of the Bankruptcy Code.  *Id.* ¶ 4.  The Recognition Order

further provided that "all of the property of FTX Digital within the territorial jurisdiction of the United States is entrusted to the Joint Provisional Liquidators." *Id.* ¶ 6.

53.     The Counterclaim Defendants reviewed, commented on, and agreed to the Recognition Order before it was submitted to the Court.

**D. Initial Disputes Between the JPLs and the Counterclaim Defendants**

54.     Following their appointment and as part of their duties, the JPLs began to investigate and secure the assets and liabilities of FTX Digital's estate.  Counsel for and officers of each of the Counterclaim Defendants immediately resisted the JPLs' efforts.  For instance, once the JPLs lost access to FTX Digital's own electronic records, including those that relate to FTX Digital's property and financial affairs, the Counterclaim Defendants, through their common representatives, refused to restore the JPLs' access.

55.     On December 9, 2022, the JPLs filed an emergency turnover motion (the "**Emergency Turnover Motion**") asking the Court to rectify this wrong by requiring that the Counterclaim Defendants turn over access to records concerning FTX Digital's property and financial affairs.  *See Emergency Motion of the Joint Provisional Liquidators of FTX Digital Markets Ltd., (I) For Relief from Automatic Stay and (II) to Compel Turnover of Electronic Records Under Sections 542, 1519(a)(3), 1521(a)(7), and 1522 of the Bankruptcy Code*, Case No. 22-11217-JTD [Dkt. No. 27].

56.     During this time, the JPLs also raised certain concerns over the Counterclaim Defendants' process that were ripe for resolution, including that (i) the best interests of FTX Trading's creditors would be served by dismissing its chapter 11 case in favor of resolution in The Bahamas; and (ii) the Counterclaim Defendants' application for retention of certain professionals could be problematic given conflicts of interest created by certain prepetition representations of

the Counterclaim Defendants and their principals (including Mr. Bankman-Fried in his personal capacity) during the time an alleged fraud was being committed.

**E.  The Cooperation Agreement**

57.    Over the 2022 holiday season and into early 2023, the JPLs, Mr. Ray, and their respective counsel spent several days, including two at White & Case's offices in Miami, Florida, attempting to resolve their disputes.  For their part, the JPLs negotiated in good faith an agreement to resolve, among other things, issues in the Emergency Turnover Motion, the potential dismissal of FTX Trading's chapter 11 case, and their objections to certain retention applications.

58.    During this time the JPLs stood down on these issues to promote cooperation between the parties.  On January 4, 2023, for example, the Court convened a status conference during which counsel to the Counterclaim Defendants suggested that this Court push the hearing on the Emergency Turnover motion to the following week.  Jan. 4 Hr'g. Tr. at 6:15-7:6.  Counsel continued, "[i]f [the parties] are unable to reach agreement, we would go forward on a contested basis on the motion to compel on the 13th." *Id.* at 8:23-25.  Counsel to the JPLs agreed and further requested that the Court extend the deadline to file a reply to the Emergency Turnover Motion because "we don't think further pleadings being filed now will be constructive." *Id.* at 7:12-17, 10:21-25.  Both the Counterclaim Defendants and this Court consented to that request. *Id.* at 11:16-18.

59.    On January 6, 2023, these negotiations led to the execution of a cooperation agreement (the "**Cooperation Agreement**").  Upon its execution, the JPLs dropped their efforts in dismissing FTX Trading's chapter 11 case, pursuing the Emergency Turnover Motion, and raising objections to certain associated applications.

60.    On February 9, 2023, this Court entered an Order approving the Cooperation Agreement pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code. *Order Approving*

*the Cooperation Agreement between the Debtors and the Joint Provisional Liquidators of FTX Digital Markets Ltd.*, Case No. 22-11068-JTD [Dkt. No. 683]. Thereafter, the Cooperation Agreement became immediately enforceable, by its terms, post-petition against all of the Counterclaim Defendants.

61.    The next day, the Bahamas Court also approved the Cooperation Agreement, making the Cooperation Agreement enforceable in The Bahamas against all of the Counterclaim Defendants.  *See Order (Settlement and Co-Operation Agreement), In the Matter of FTX Digital Markets Ltd.*, 10 February, 2023.

62.    The Cooperation Agreement resolved several key issues by, among other things, mandating that:

- The Counterclaim Defendants and the JPLs support the Provisional Liquidation of FTX Digital and the Chapter 11 Cases, respectively (Cooperation Agreement, ¶¶ 12-13);

- FTX Digital has primary responsibility for recovering value from the assets and property held in FTX Digital's name (*Id.* ¶ 4);

- FTX Digital takes the lead in managing and/or selling the properties owned by FTX Property Holdings Ltd. ("**PropCo**") (*Id.* ¶ 15);

- The Counterclaim Defendants turn over the information the FTX Digital Defendants sought in the Emergency Turnover Motion (*Id.* ¶ 22);

- FTX Digital has primary responsibility for recovering value from the approximately $45 million Tether International Limited ("**Tether**") funds (*Id.* ¶ 4);

- The Parties cooperate regarding the future of the International Platform and the cryptocurrency associated with the International Platform (*Id.* ¶ 6); and

- The Parties work together to determine ownership of assets that are subject to competing claims and, where one Party wishes to resolve a dispute, such Party provides reasonable notice to the other party before proceeding with litigation (*Id.* ¶ 11).

**F.  The Counterclaim Defendants Interfere with the FTX Digital Defendants' Efforts to Regain Control of Bank Accounts Located in the United States**

63.     The Cooperation Agreement grants FTX Digital primary responsibility for recovering value from the assets and property held in FTX Digital's name.  Cooperation Agreement, ¶ 4.  The Cooperation Agreement further provides that the Counterclaim Defendants "shall support the continuation of [FTX Digital's] provisional liquidation." *Id.* ¶ 12.

64.     Prepetition, in the normal course of business, FTX Digital opened numerous accounts at various banks in its own name.  For instance, FTX Digital had five bank accounts in its name and under its control at Silvergate Bank, ending in 2549, 2556, 2564, 0036, and 0037 (the "**Silvergate Accounts**").  As of November 10, 2022, the Silvergate Accounts collectively had approximately $6 million and approximately €87 million on deposit.  FTX Digital also had a bank account in its name and under its control ending in 2685 at Farmington State Bank d/b/a Moonstone Bank (the "**Moonstone Account**"), which had nearly $50,000,000 on deposit as of January 4, 2023.  The Silvergate Accounts and the Moonstone Account are "property held in FTX Digital's name," as specified in the Cooperation Agreement.

65.     On January 20, 2023, the United States Department of Justice informed the Court that "the United States has seized . . . approximately 56 million in United States currency and 87 million Euros from accounts at Moonstone Bank and Silvergate." *See United States' Notice of Asset Seizures*, Case No. 22-11217 [Dkt No. 119].  It is unclear, at this point, what role, if any, the Counterclaim Defendants or their representatives had in such seizures.

66.     The JPLs have been actively seeking the release of the frozen and seized Moonstone Account and Silvergate Accounts from the U.S. Government.  But upon information and belief, the Counterclaim Defendants have deliberately interfered with these post-seizure efforts.  For example, on April 12, 2023, at a hearing before this Court, counsel for the Counterclaim

Defendants conceded that they have been "working in parallel" with the U.S. Government to "secure" funds belonging to FTX Digital.  *See* Apr. 12, 2023 Hr'g Tr. at 10:07-10 ("We also appreciate the U.S. criminal authorities working in parallel with us to secure assets.  This includes approximately 100 million in cash in the name of FTX Digital.").

67.    The Counterclaim Defendants have also continued to assert rights to FTX Digital's assets in the Moonstone and Silvergate Accounts.  *Debtors' Objection to Motion of the Joint Provisional Liquidators for a Determination that The U.S. Debtors' Automatic Stay Does Not Apply to, or in the Alternative for Relief from Stay for Filing of the Application in the Supreme Court of the Commonwealth of the Bahamas Seeking Resolution of Non-Us Law and Other Issues*, Case No. 22-11068-JTD [Dkt. No. 1409], ¶ 49 ("[A]voidance claims in the Adversary Proceeding [] confirm that the [U.S.] Debtors stand first in line to recover this cash asset [the cash in the Moonstone Account and Silvergate Accounts] to the extent it is ever released by the government[.]").

68.    Without access to liquid funds, the FTX Digital Defendants cannot preserve assets in FTX Digital's name which are worth hundreds of millions of dollars.  These assets are consequentially being wasted, lost, and depreciated by multi-millions of dollars over time.

### G.  The Counterclaim Defendants Breach Their PropCo Obligations

69.    With respect to PropCo, the Cooperation Agreement provides that the JPLs "shall take the lead in managing the properties, determining the appropriate strategy for monetization of the properties, identifying buyers and conducting the marketing process."  Cooperation Agreement, ¶ 15.  The Cooperation Agreement further provides that (1) "a liquidation proceeding with respect to Prop[C]o will be opened in the Bahamas Court," or (2) the properties will be liquidated through "another *mutually acceptable* arrangement for the sale of the properties."  *Id.* (emphasis added).

70.    Consistent with the Cooperation Agreement, the JPLs have been acting in good faith to maintain, preserve and protect the properties.  They have done so at considerable expense to FTX Digital's estate, including, but not limited to, the payment of security, cleaning, and utility costs in connection with the properties.

71.    Further, per the Cooperation Agreement, the JPLs also began to take steps in good faith to open a liquidation proceeding for PropCo in the Bahamas Court.  After discussing it with representatives of the Counterclaim Defendants, the JPLs served a statutory demand on PropCo on February 14, 2023.  The Counterclaim Defendants, through counsel, responded by threatening that the JPLs violated PropCo's automatic stay.  Consistent with the Cooperation Agreement and with the Counterclaim Defendants' promise to continue discussing options to initiate a liquidation proceeding of PropCo, the JPLs withdrew their statutory demand on February 17, 2023.  Thereafter, the Counterclaim Defendants failed to re-engage with the JPLs concerning any PropCo liquidation proceedings in The Bahamas, despite repeated efforts by the JPLs to engage on the issue.

72.    On April 28, 2023, the JPLs heard from property managers that individuals from the Counterclaim Defendants' local Bahamian counsel and Counterclaim Defendants' financial advisor, Alvarez & Marsal North America, LLC ("**A&M**"), were attempting to access the PropCo properties and otherwise causing confusion regarding the control of such properties in contravention of the Cooperation Agreement.  When the JPLs confronted the Counterclaim Defendants about these actions, the Counterclaim Defendants informed the JPLs that they instructed A&M to sell the properties for cash.  The Counterclaim Defendants did not seek the JPLs' consent before taking the lead on a sale process as they are required to do under the

Cooperation Agreement.  The JPLs did not, and do not, agree to the Counterclaim Defendants commencing any sale process without the JPLs' consent.

### H. The Counterclaim Defendants Continue to Withhold FTX Digital's Data from the JPLs

73. The Cooperation Agreement also provides that the "Parties will share information in their possession concerning the matters contemplated by this Agreement."  Cooperation Agreement, ¶ 22.  In reliance on the Counterclaim Defendants' promises of forthcoming productions of FTX Digital's information, the JPLs stopped prosecuting the Emergency Turnover Motion.

74. The information-sharing provisions of the Cooperation Agreement are subject to the negotiated, mutually agreeable non-disclosure agreement ("**NDA**"), which the Counterclaim Defendants and the JPLs executed on January 30, 2023.  Around that time, the Counterclaim Defendants turned over some of FTX Digital's information, such as QuickBooks records and an incomplete copy of the Amazon Web Services ("**AWS**") system, which holds all the data of the FTX International Platform.

75. Despite the Cooperation Agreement and NDA (and numerous informal representations otherwise), the Counterclaim Defendants continue to withhold critical FTX Digital materials from the JPLs, including (i) FTX Digital employee communications in the Counterclaim Defendants' possession; (ii) a complete copy of the AWS system; and (iii) FTX Digital's cloud based or share-drives.

76. Most recently, the Counterclaim Defendants have demanded that the FTX Digital Defendants *again* submit a request for their own information with the promise that, once received, the Counterclaim Defendants would make the information immediately available.  Despite the fact that this agreement was the Counterclaim Defendants' clear attempt to limit the FTX Digital

Defendants' use of their own data, the FTX Digital Defendants acquiesced in an effort to put these gating issues to rest. But even after the FTX Digital Defendants served the agreed-upon document requests, the Counterclaim Defendants have still not agreed to give the JPLs FTX Digital's own data.

77. The Counterclaim Defendants' actions have deprived the FTX Digital Defendants of crucial information needed to properly administer the FTX Digital estate, causing the FTX Digital Defendants to incur unnecessary costs and attorneys' fees.

**I.    The Counterclaim Defendants Try to Obtain the Tether Funds**

78. Through the Cooperation Agreement, "[t]he Parties agree that [FTX Digital] shall be primarily responsible for recovering value from . . . (b) the approximately $45 million of [Tether] currently frozen in The Bahamas." Cooperation Agreement, ¶ 4.

79. On November 12, 2022, the Bahamas Court issued an order authorizing the SCB to instruct FTX Digital to transfer assets to digital wallets controlled by the SCB. *FTX Digital Markets Ltd.*, 8 February 2023 Interim Report, § 11.1. The SCB identified approximately $45 million of cryptocurrency tokens (the "**Tether Funds**") in a digital wallet held by Tether – a cryptocurrency company located in The Bahamas. *Id.*

80. The SCB then sent instructions for the transfer of the Tether Funds to the SCB-controlled wallet. *Id.* But these tokens were not transferred because, after meeting with Tether representatives, the SCB agreed that in light of the chapter 11 proceedings, Tether would maintain a freeze over the Tether Funds until ownership of the tokens was resolved.

81. Thereafter, the Counterclaim Defendants and the JPLs negotiated and executed the Cooperation Agreement. Despite the clear terms of the Cooperation Agreement, not even a month had passed before the Counterclaim Defendants made claim to the Tether Funds. The Counterclaim Defendants have also recently conceded that they have made efforts to secure the

Tether Funds for themselves.  Due to the conflicting estates' claims to the Tether Funds, and although the JPLs have asked representatives at Tether to release them, Tether has not released the Tether Funds to the JPLs to date.

82.    By asserting ownership over the Tether Funds, the Counterclaim Defendants have interfered with the JPLs' execution of their court-mandated duties as the Provisional Liquidators of FTX Digital's estate and have breached the Cooperation Agreement.

**J.   The Counterclaim Defendants Refuse to Cooperate with the JPLs on Restarting the International Platform**

83.    The Cooperation Agreement provides that "[t]he Parties will work together in good faith during the next six months (commencing [January 6, 2023]) in coordination with appropriate stakeholders in their respective proceedings to develop alternatives for the potential sale, reorganization or other monetization of (a) the international FTX.com platform [] and (b) cryptocurrency held or managed by the Chapter 11 Debtors in accordance with this Agreement and associated with the International Platform (and not traceable to customers of FTX US)." Cooperation Agreement, ¶ 6.

84.    The Cooperation Agreement further provides that, "[e]ach Party shall consult reasonably and in good faith with the other Party . . . in connection with the asset recovery functions related to the International Platform for which it has primary responsibility, including without limitation . . . (a) the reasonableness of the asset recovery decisions for which it has a primary responsibility; (b) the settlement of intercompany claims; (c) the desirability or viability of a potential reorganization of the International Platform; and (d) the relative recovery of International Platform customers versus other creditors[.]" *Id.* ¶ 9.

85.     The Counterclaim Defendants have been engaging with stakeholders regarding the International Platform.[4]  *See* Apr. 12, 2023 Hr'g Tr. at 17:15-18 (Mr. Dietderich: "the options being considered include a restart of the exchange from an operational and a functional perspective").  Despite the Cooperation Agreement mandates, the Counterclaim Defendants have not involved FTX Digital in any such discussions and have failed to transmit information to the JPLs on the matters contemplated by the Cooperation Agreement.  The Official Committee of Unsecured Creditors (the "**Committee**") has recently echoed similar issues with respect to the Counterclaim Defendants' lack of communications, transparency, and cooperation. *See Statement and Reservation of Rights of Official Committee of Unsecured Creditors Regarding Motion of Debtors for Entry of an Order Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof*, Case No. 22-11068-JTD [Dkt. No. 1227], ¶ 6 ("However, the Committee has often felt that the Debtors can and should provide the Committee and its members, in particular, with more notice of material actions and should allow more information to flow directly to the members of the Committee.").  Indeed, at the April 12, 2023 hearing, the Court admonished the Counterclaim Defendants for their lack of transparency thus far.  *See* Apr. 12, 2023 Hr'g Tr. at 24:1-7 ("I expect the debtors and the Committee to cooperate fully and there [to] be a free-flow of information between the two.  I did not appoint an examiner because we have an independent Board of Directors and independent CEO running the debtors, so I expect that there will be an open and free-flow of information.").

---

[4] The Counterclaim Defendants' fee statements confirm the same.  *See, e.g.*, *Notice of Filing of Monthly Staffing Report and Compensation Report by Owl Hill Advisory, LLC for the Period April 1, 2023, through April 30, 2023*, Case No. 22-11068-JTD [Dkt. No. 1523] (including the following entries: "04/04/2023: Review Sygnia work plan for exchange fortification and comment back to A&M;" "04/12/2023: Review term sheet for plan structuring exchange;" "04/14/2023: Review 2.0 next steps summary from PWP;" "04/17/2023: Review next steps and comment on FTX restart;" "04/19/2023: Review and finalize 2.0 reboot of exchange material for distribution;" "04/24/2023: Emails with PWP re 2.0 communication;" and "04/30/2023: Review and comment on 2.0 bidder list").

86.     Although the Counterclaim Defendants promised to provide more transparency, they have not.

### K. The Counterclaim Defendants Refuse to Cooperate with the JPLs on Foreign Law Customer Issues

87.     The Cooperation Agreement provides that the parties will cooperate on issues regarding the determination of which customers of the FTX International Platform were customers of FTX Trading, FTX Digital, or both.   Cooperation Agreement, ¶ 11.   The Cooperation Agreement further provides that the parties will propose a framework for communication and cooperation between this Court and the Bahamas Court. *Id.*  ¶¶ 18, 19(a).

88.     The JPLs sought for months to work with the Counterclaim Defendants on coming up with a process for resolving issues relating to the identification and protection of FTX Digital's accountholders, customers, and creditors (the "**Foreign Law Customer Issues**").  For instance, on March 9, 2023, the JPLs sent the Counterclaim Defendants' counsel a draft application that they wished to file with the Bahamas Court, seeking the Bahamas Court's guidance on the Foreign Law Customer Issues (the "**Application**") as they related to FTX Digital's assets.  On March 15, 2023, the JPLs held a telephonic conference with Mr. Ray and his counsel in an attempt to discuss a cooperative framework for resolving all Foreign Law Customer Issues, in accordance with this Court's Local Rules and the Cooperation Agreement.  By these efforts, the JPLs intended to frame a process by which this Court and the Bahamas Court could resolve which questions would be addressed in which court, as is common practice in cross-border insolvencies like these.  Yet, in contravention of the Cooperation Agreement, the Counterclaim Defendants refused outright to cooperate with the JPLs on either issue and have actively fought against the JPLs.

**L.  The Plaintiffs Sue the FTX Digital Defendants**

89.     Finally, the Cooperation Agreement provides that "[w]here one Party wishes to resolve a dispute . . . such Party *may upon reasonable notice to the other party* proceed with litigation[.]"  Cooperation Agreement, ¶ 11 (emphasis added).

90.     Without any meaningful engagement with the JPLs, on March 19, 2023, certain Counterclaim Defendants initiated this Adversary Proceeding.  Compl. [Dkt. No. 1].  These Counterclaim Defendants filed the Amended Complaint on June 14, 2023.  Amended Compl. [Dkt. No. 18].

91.     The Adversary Proceeding requests declaratory judgments on the same issues that the JPLs had painstakingly identified and sought to resolve through a consensual cross-border cooperation protocol between the Bahamas Court and this Court.  *See id.*  At the center of many of these issues lies FTX Digital's rights and obligations under the New Terms of Service.  *See id.*

92.     The Plaintiffs never substantively discussed the Adversary Proceeding with the JPLs.  Instead, they commenced this proceeding on one hour's notice to one of the JPLs' counsel.

93.     Additionally, in contravention of the Recognition Order and FTX Digital's automatic stay, the Plaintiffs filed the Amended Complaint against FTX Digital and the JPLs.  The Amended Complaint improperly seeks (i) a declaration from this Court that FTX Digital has no rights to its estate assets and property, and (ii) to avoid and recover transfers, either "made or attempted," of property "to or through" FTX Digital.

<u>**COUNTERCLAIM I: BREACH OF CONTRACT (MOONSTONE AND SILVERGATE ACCOUNTS)**</u>
**(Against All Counterclaim Defendants)**

94.     The averments in paragraphs 1-93 are incorporated by reference as if fully set forth herein.

46

95.     The Counterclaim Defendants and the JPLs entered into the Cooperation Agreement on January 6, 2023, which was approved by this Court on February 9, 2023.  The JPLs materially performed on all of their obligations under the Cooperation Agreement.

96.     The Cooperation Agreement provides that "[t]he Parties agree that [FTX Digital] shall be primarily responsible for recovering value from (a) the assets and property in the name of [FTX Digital], including without limitation, all real and personal property and bank and security accounts in the name of [FTX Digital], [wherever] located."  Cooperation Agreement, ¶ 4.

97.     The Cooperation Agreement further provides that the Counterclaim Defendants "shall support the continuation of [FTX Digital's] provisional liquidation." *Id.* ¶ 12.

98.     Since executing the Cooperation Agreement, the Counterclaim Defendants have actively interfered with FTX Digital's efforts to recover the property held in the Silvergate Accounts and Moonstone Account.

99.     The Counterclaim Defendants have breached the Cooperation Agreement by affirmatively seeking to deprive the JPLs of assets and property held in FTX Digital's name.

100.    As a result of the Counterclaim Defendants' actions, the FTX Digital Defendants have been damaged insofar as they have been deprived of crucial assets needed to properly administer the FTX Digital estate in an amount no less than $151,000,000.

### COUNTERCLAIM II: VIOLATION OF THE AUTOMATIC STAY AND RECOGNITION ORDER (MOONSTONE AND SILVERGATE ACCOUNTS)
#### (Against All Counterclaim Defendants)

101.    The averments in paragraphs 1-93 are incorporated by reference as if fully set forth herein.

102.     The Recognition Order states that "[a]ll of the property of FTX Digital within the territorial jurisdiction of the United States is entrusted to the Joint Provisional Liquidators." Recognition Order, ¶ 6.

103.     The Recognition Order also grants FTX Digital and the JPLs "all relief and protection afforded to foreign main proceeding under Section 1520 of the Bankruptcy Code . . . including application of the sections 1520(a) and Section 362 of the Bankruptcy Code stay to bar actions against FTX Digital and/or property of FTX Digital located within the territorial jurisdiction of the United States." *Id.* ¶ 4.

104.     Section 1520(a)(1) of the Bankruptcy Code provides that upon the recognition of a foreign main proceeding, "sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(1). Section 362(a)(3) of the Bankruptcy Code operates as a "stay" of "any act" to "exercise control" over the property of the estate. *See* 11 U.S.C. § 362(a)(3).

105.     The Counterclaim Defendants have interfered and continue to interfere with FTX Digital's efforts to recover the Moonstone Account and Silvergate Accounts, both of which are property of FTX Digital within the territorial jurisdiction of the United States.  The Counterclaim Defendants have taken steps to convince the U.S. Government not to release the Moonstone Account and Silvergate Accounts to the JPLs and have conceded that they have been "working in parallel" with the U.S. Government to secure FTX Digital's funds held in its name.

106.     By taking the foregoing acts, the Counterclaim Defendants violated the automatic stay, section 1520 of the Bankruptcy Code, and the Recognition Order.

107.    As a result of the Counterclaim Defendants' actions, the FTX Digital Defendants have been damaged insofar as they have been deprived of crucial assets needed to properly administer the FTX Digital estate.

## COUNTERCLAIM III: VIOLATION OF THE AUTOMATIC STAY AND RECOGNITION ORDER (ADVERSARY PROCEEDING)
### (Against Plaintiffs)

108.    The averments in paragraphs 1-93 are incorporated by reference as if fully set forth herein.

109.    The Recognition Order granted FTX Digital and the JPLs "all relief and protection afforded to foreign main proceeding under Section 1520 of the Bankruptcy Code . . . including application of the sections 1520(a) and Section 362 of the Bankruptcy Code stay to bar actions against FTX Digital and/or property of FTX Digital located within the territorial jurisdiction of the United States."  Recognition Order, ¶ 4.

110.    Section 1520(a)(1) of the Bankruptcy Code provides that upon the recognition of a foreign main proceeding, "sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States." 11 U.S.C. § 1520(a)(1). Section 362(a)(1) of the Bankruptcy Code prohibits "the commencement . . . of a judicial, administrative, or other action or proceeding against the debtor[.]" 11 U.S.C. § 362(a)(1).  The automatic stay also bars actions against non-debtors where there is such identity between the non-debtors and the debtor that a judgment against the non-debtor will in effect be a judgment against the debtor.

111.    The Plaintiffs named FTX Digital and the JPLs as defendants in the Adversary Proceeding seeking control over FTX Digital's property through declaratory judgment and

avoidance actions.  All allegations in the Amended Complaint against the JPLs are for actions the JPLs took in their capacity as FTX Digital's court-appointed representatives.

112.    By taking the foregoing acts, the Plaintiffs violated the automatic stay, section 1520 of the Bankruptcy Code, and the Recognition Order.

113.    As a result of the Plaintiffs' actions, the FTX Digital Defendants have been damaged insofar as they have been deprived of crucial assets needed to properly administer the FTX Digital estate.

## COUNTERCLAIM IV: BREACH OF CONTRACT (PROPCO)
### (Against All Counterclaim Defendants)

114.    The averments in paragraphs 1-93 are incorporated by references as if fully set forth herein.

115.    The Counterclaim Defendants and the JPLs entered into the Cooperation Agreement on January 6, 2023, which was approved by this Court on February 9, 2023.  The JPLs materially performed on all of their obligations under the Cooperation Agreement.

116.    The Cooperation Agreement provides that "[t]he JPLs . . . shall take the lead in managing the properties, determining the appropriate strategy for the monetization of the properties, identifying buyers and conducting the marketing process, provided that the strategy, as well as the buyers and deal terms recommended by the JPLs, will be subject to approval by the Chapter 11 Debtors (such approval not to be unreasonably withheld or delayed)."  Cooperation Agreement, ¶ 15.

117.    The Cooperation Agreement further mandates that "either a liquidation proceeding with respect to PropCo will be opened in the Bahamas Court to run concurrently with the pending Chapter 11 case of PropCo or the Parties will determine another *mutually acceptable arrangement*

for the sale of the applicable properties free and clear of claims against such properties." *Id.* ¶ 15 (emphasis added).

118.    The Counterclaim Defendants have breached the Cooperation Agreement by interfering with the JPLs' efforts to initiate a PropCo liquidation proceeding.

119.    The Counterclaim Defendants have also breached the Cooperation Agreement by attempting to sell the PropCo properties without cooperating with the JPLs on a mutually acceptable arrangement for sale.

120.    As a result of the Counterclaim Defendants' actions, the FTX Digital Defendants have been damaged insofar as they have been deprived of crucial assets needed to properly administer the FTX Digital estate.

### COUNTERCLAIM V: BREACH OF CONTRACT (INFORMATION SHARING)
#### (Against All Counterclaim Defendants)

121.    The averments in paragraphs 1-93 are incorporated by reference as if fully set forth herein.

122.    The Counterclaim Defendants and the JPLs entered into the Cooperation Agreement on January 6, 2023, which was approved by this Court on February 9, 2023.  The JPLs materially performed on all of their obligations under the Cooperation Agreement.

123.    Subject to a mutually agreeable NDA, the Cooperation Agreement provides that the "Parties will share information in their possession concerning the matters contemplated by this Agreement."  Cooperation Agreement, ¶ 22.

124.    After entry of the NDA, the Counterclaim Defendants continue to refuse to provide the JPLs with (i) FTX Digital employee communications in the Counterclaim Defendants' possession; and (ii) complete AWS data of the FTX International Platform.

RLF1 29291250v.2

125.    The Counterclaim Defendants have breached the Cooperation Agreement by refusing to share information in their possession concerning the matters contemplated by the Cooperation Agreement, namely, the Counterclaim Defendants' agreement to support the Provisional Liquidation of FTX Digital.

126.    As a result of the Counterclaim Defendants' actions, the FTX Digital Defendants have been damaged insofar as they have been deprived of crucial information needed to properly administer the FTX Digital estate.

### COUNTERCLAIM VI: BREACH OF CONTRACT (TETHER FUNDS)
#### (Against All Counterclaim Defendants)

127.    The averments in paragraphs 1-93 are incorporated by reference as if fully set forth herein.

128.    The Counterclaim Defendants and the JPLs entered into the Cooperation Agreement on January 6, 2023, which was approved by this Court on February 9, 2023.  The JPLs materially performed on all of their obligations under the Cooperation Agreement.

129.    The Cooperation Agreement provides that "[t]he Parties agree that [FTX Digital] shall be primarily responsible for recovering value from . . . (b) the approximately $45 million of [Tether] currently frozen in The Bahamas."  Cooperation Agreement, ¶ 4.  The Cooperation Agreement further provides that the Counterclaim Defendants "shall support the continuation of [FTX Digital's] provisional liquidation."  *Id.* ¶ 12.

130.    The Counterclaim Defendants have attempted to gain access and control over the Tether Funds.

131.    As a result, Tether has refused to release the Tether Funds to the JPLs.

132.    The Counterclaim Defendants have breached the Cooperation Agreement by affirmatively seeking to deprive FTX Digital of the Tether Funds.

133.   As a result of the Counterclaim Defendants' actions, the FTX Digital Defendants have been damaged insofar as they have been deprived of crucial assets needed to properly administer the FTX Digital estate, in an amount no less than $45,000,000.

### COUNTERCLAIM VII: BREACH OF CONTRACT (FTX INTERNATIONAL PLATFORM)
**(Against All Counterclaim Defendants)**

134.   The averments in paragraphs 1-93 are incorporated by reference as if fully set forth herein.

135.   The Counterclaim Defendants and the JPLs entered into the Cooperation Agreement on January 6, 2023, which was approved by this Court on February 9, 2023.  The JPLs materially performed on all of their obligations under the Cooperation Agreement.

136.   The Cooperation Agreement provides that "[t]he Parties will work together in good faith during the next six months (commencing on the date hereof) in coordination with appropriate stakeholders in their respective proceedings to develop alternatives for the potential sale, reorganization or other monetization of (a) the international FTX.com platform [] and (b) cryptocurrency held or managed by the Chapter 11 Debtors in accordance with this Agreement and associated with the International Platform (and not traceable to customers of FTX US)." Cooperation Agreement, ¶ 6.

137.   The Cooperation Agreement further provides that "[e]ach Party shall consult reasonably and in good faith with the other Party . . . in connection with the asset recovery functions related to the International Platform for which it has primary responsibility, including without limitation . . . (a) the reasonableness of the asset recovery decisions for which it has a primary responsibility; (b) the settlement of intercompany claims; (c) the desirability or viability

of a potential reorganization of the International Platform; and (d) the relative recovery of International Platform customers versus other creditors." *Id.* ¶ 9.

138.    At the hearing before the Court on April 12, 2023, counsel for the Counterclaim Defendants stated that "the options being considered include a restart of the exchange from an operational and a functional perspective." Apr. 12, 2023 Hr'g Tr. at 17:15-18.

139.    To date, the JPLs have not been involved in a single discussion regarding a potential restart of any of the FTX exchanges.

140.    The Counterclaim Defendants have breached the Cooperation Agreement by refusing to include the JPLs in any discussions regarding a restart or reorganization of the International Platform, as contemplated by the Cooperation Agreement.

141.    As a result of the Counterclaim Defendants' actions, the FTX Digital Defendants have been damaged insofar as they have been deprived of crucial assets needed to properly administer the FTX Digital estate.

## COUNTERCLAIM VIII: BREACH OF CONTRACT (ADVERSARY PROCEEDING)
### (Against Plaintiffs)

142.    The averments in paragraphs 1-93 are incorporated by reference as if fully set forth herein.

143.    The Counterclaim Defendants and the JPLs entered into the Cooperation Agreement on January 6, 2023, which was approved by this Court on February 9, 2023.  The JPLs materially performed on all of their obligations under the Cooperation Agreement.

144.    The Cooperation Agreement provides that "[t]he Parties will work together and in good faith to determine ownership of assets that are subject to competing claims and to ensure that any court process(es) relating to an adjudication of any dispute are conducted as efficiently as

54

possible" and "[w]here one Party wishes to resolve a dispute . . . such Party *may upon reasonable notice to the other party* proceed with litigation[.]"   Cooperation Agreement, ¶ 11 (emphasis added).

145.    On March 19, 2023, without any significant engagement with the JPLs, the Plaintiffs initiated the Adversary Proceeding.  The Plaintiffs did not provide the JPLs with any prior notice of the adversary proceeding.

146.    The Plaintiffs have breached the Cooperation Agreement by bringing the Adversary Proceeding without notice to the JPLs and by failing to support the Provisional Liquidation.

147.    As a result of the Counterclaim Defendants' actions, the FTX Digital Defendants have been damaged insofar as they must defend themselves against the Counterclaim Defendants' spurious allegations, which will incur significant costs and distract the FTX Digital Defendants from focusing on the Provisional Liquidation.

**COUNTERCLAIM IX: DECLARATORY JUDGMENT REGARDING TERMS UNDER WHICH DIGITAL ASSETS AND FIAT WERE HELD BY FTX DIGITAL IN THE UNITED STATES FOR THE BENEFIT OF CUSTOMERS**
**(Against All Counterclaim Defendants)**

148.    The averments in paragraphs 1-93 are incorporated by reference as if fully set forth herein.

149.    A real and present controversy exists as to FTX Digital's rights and obligations under the Terms of Service, including the rights of FTX Digital to digital assets and fiat currently held in the United States for its customers.

150.    Upon a finding in FTX Digital's favor on the Foreign Law Customer Issues, the FTX Digital Defendants are further entitled to an order declaring the terms under which FTX Digital held digital assets and fiat in the United States for the benefit of its customers under English law.

## PRAYER FOR RELIEF

WHEREFORE, the FTX Digital Defendants request that this Court grant the following relief against the Counterclaim Defendants:

1.      Enter an order that the Counterclaim Defendants have breached the Cooperation Agreement;

2.      Enter an order that the Counterclaim Defendants have violated FTX Digital's automatic stay and the Recognition Order;

3.      Enter an order declaring the terms under which FTX Digital held all digital assets and fiat in the United States;

4.      Award the FTX Digital Defendants damages as a post-petition administrative claim against each of the Counterclaim Defendants for an amount to be determined at trial; and

5.      Award the FTX Digital Defendants all other relief, at law or equity, to which they may be entitled, or that this Court may deem just and proper.

Dated: July 12, 2023

*/s/ Kevin Gross*
**RICHARDS, LAYTON & FINGER, P.A.**

Kevin Gross (No. 209)
Paul N. Heath (No. 3704)
Brendan J. Schlauch (No. 6115)
David T. Queroli (No. 6318)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701
gross@rlf.com
heath@rlf.com
schlauch@rlf.com
queroli@rlf.com
-and-

**WHITE & CASE LLP**

Jessica C. Lauria (admitted *pro hac vice*)
J. Christopher Shore (admitted *pro hac vice*)
Brian D. Pfeiffer (admitted *pro hac vice*)
Ashley R. Chase (admitted *pro hac vice*)
Brett L. Bakemeyer (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
jessica.lauria@whitecase.com
cshore@whitecase.com
brian.pfeiffer@whitecase.com
ashley.chase@whitecase.com
brett.bakemeyer@whitecase.com

Thomas E Lauria (admitted *pro hac vice*)
Richard S. Kebrdle (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
rkebrdle@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
111 S Wacker Dr. Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com

*Attorneys for FTX Digital Markets, Ltd. and the Joint Provisional Liquidators of FTX Digital Markets Ltd. (in Provisional Liquidation)*